[See 2 Fed. 277.]

SUTTER (UNITED STATES v.). See Case No. 16,424.]

## Case No. 13,645.

SUTTON v. The ALBATROSS.

[2 Wall. Jr. 327; 1 Am. Law Reg. 87; 1 Phila. 423; 10 Leg. Int. 10; 10 West. Law J. 197.] [1]

Circuit Court, E. D. Pennsylvania. Nov., 1852.

MARITIME LIEN—TAKING NOTE—RELEASE OF LIEN —INTENTION.

Under the Pennsylvania statute of June 13, 1836 [Laws 1835–36, p. 617], giving to mechanics a lien for work done to vessels, the lien is not necessarily discharged by the party's taking a note, and giving a receipt in full. Such receipt may be explained by showing negatively, that there was no contract or contemplation to discharge the lien; and by showing positively, by even slight facts. a different purpose which induced the transaction.

[Cited in Srodes v. The Collier. Case No. 13,-272; The Dubuque, Id. 4,110.]

[Cited in Aiken v. The Fanny Barker. 40 Mo. 260; Swain v. Frazier. 35 N. J. Eq. 334.]

[See The Active, Case No. 34.]

[Appeal from the district court of the United States for the Eastern district of Pennsylvania.]

Sutton had made repairs to the Albatross, a vessel. owned at Philadelphia by a corporation governed by directors elected from time to time. And under the statute law of Pennsylvania he had a lien on the vessel for his work. According to the usual and previous course of dealing of the company, as well with Sutton as with others, it had made its settlements every six months; but on this occasion the managers being about to resign prior to the expiration of that term, Sutton came to the president. rendering his bill up to the date of it, and requesting him to close the account previously to the change of directorship: as if that was not done, a new board might raise some dispute or difficulty, a thing which he wished to avoid. "He re-

[1] [Reported by John William Wallace, Esq. 10 Leg. Int. 10, contains only a partial report.]

quested the settlement," it was testified, "prior to the usual time, as a favour, on account of the expected change in the directorship." The president, finding the account correct, directed his clerk to draw notes at four months for the amount, and to take Sutton's receipt for them; nothing having been said or suggested by any body as to the form of the notes or receipt, or as to the effect of either or both of them in releasing the lien. The clerk drew notes in the ordinary form at four months, and gave them to Sutton, who, without saying anything. signed a receipt for them, drawn by the clerk, "in full for repairs of steamship to this date." Before the notes matured, the company failed, and made a general assignment; and Sutton, having produced and deposited in court all the notes, now sought to enforce his original lien against the ship. The question accordingly before the court was, whether he had lost his lien by taking the notes in the manner stated. The district court, from which the case was here on appeal, had decided that it was not lost. [Case unreported.]

2 [The only evidence in the case was the deposition of Samuel T. Pierce, who had been superintendent of the company, and in charge of their books. The material parts of his testimony are as follows: "Mr. Thompson was president of the company in December, 1850. I was present at an interview between Mr. Thompson and Mr. Sutton, in relation to the work on the 16th December. Mr. Sutton rendered his bill for work against both the Albatross and Osprey, up to that date, and requested that Mr. Thompson would close it by notes, previous to his resignation, and the rest of the board; as, if that was not done, a new board might raise some dispute or difficulty, which he wished to avoid. Mr. Thompson examined the account, and requested me to draw four notes for the amount, in equal portions, and to take Mr. Sutton's receipt for them. That is all I recollect that passed. I drew the notes and took the receipts. The notes were given at the request of Mr. Sutton, on account of the directors being about to resign. Mr. Sutton's mode of dealing, account and settlement, with the company, six months' settlements; first of January and July,—for repairs. I say for repairs, because contracts for building are different; they are settled when they are finished. Mr. Sutton requested this settlement as a favor, on account of the expected resignation. He requested it prior to the usual time of settlement, for the reasons I have mentioned. They actually resigned, subsequently, but their resignations were refused by the stockholders." On cross examination, the witness stated that Mr. Sutton's account was a running account; that by the words "their course of settlement" he meant what he learnt from the books, as well as his own knowledge, admitting that he had never been present at any interview between Sutton and others, on behalf of the company, as to how he was to be paid for his work, except on the day when the notes were given; and that no notes were given under these six months' settlements, except those on the contracts. It is to be remarked, that the notes received by Sutton were never negotiated, but were brought into court at the hearing, and surrendered; and that the receipt was a mere printed form, filled up by the clerk.] 2

The case was first called for argument somewhat out of course. but Mr. St. G. T. Campbell for libellant, Sutton, regarding it as a clear case in favour of the lien, proceeded to argue it without much preparation, and without citing any authorities. Mr. G. M. Wharton and Mr. Balch having argued the case more fully, Mr. Justice GRIER at a subsequent day gave a written opinion, reversing the decree below, and so deciding that the lien was gone. In consequence however of the mode in which the case had been called, and on Mr. Campbell's promising to cite authorities on his side directly in point, the court permitted a re-argument; and it was now heard again

Mr. Wharton and Mr. Balch.

The law of Pennsylvania does not differ materially from the civil or maritime law on this subject. But as the lien claimed by the libellant, is given by the statute of Pennsylvania, the local law as to its extinguishment or waiver must govern. In one Pennsylvania case (Hart v. Boller, 15 Serg. & R. 162) it was decided that a new note, without a fresh consideration, is not a satisfaction of a preceding one. unless it has been accepted as such. And in another (Kinsley v. Buchanan, 5 Watts, 118), that the acceptance of a note without an express stipulation was not deemed a relinquishment of such a lien. In a third case (Jones v. Shawhan, 4 Watts & S. 257) the plaintiff had taken the note of the owner, and given his receipt in full of the bill for materials, and the court below instructed the jury that such a receipt was not an extinguishment or satisfaction of the original bill as to affect his right to a lien. But the supreme court reversed the judgment of the court below on this point, and decided this was a fact to be decided by a jury, and said: "By the receipt at the foot of the bill, it appeared that the plaintiff had accepted the owner's note 'in full of the bill,' which certainly was evidence to rebut the presumption, and ought to have been left to the jury." In the case before the court, Sutton's purpose was to "close the account." He took a marketable security, which was of itself an advantage, and gave a receipt in full on his bill. His intention must be judged of from his own written discharge or receipt. Without it, the law would not have presumed the note, if

not negotiated, to be an extinguishment of the original debt. But, although a receipt in full may not have the technical effect of a release under seal, it is, till rebutted, conclusive evidence of satisfaction of the original debt. It is true that such a receipt is not an estoppel. It may be explained, or even contradicted. It may be shown to have been given by mistake, or obtained by fraud. But without other evidence showing that the parties did not intend, what their words clearly express, the court have no right to presume it. The court, in this case, cannot devolve the duty of judging of the intention of the parties, upon a jury; and there is no evidence in the case which would justify a jury in deciding that the receipt does not express the meaning of the parties who signed it. The testimony shows that the plaintiff usually settled with the defendants every six months, and received their notes or payment in cash; and that in the present case they settled with the defendants, previously to the usual day, because they expected that a new set of directors might be elected, with whom they might have difficulty. Here, too, as in getting a negotiable security, they gained an advantage, which may well have been a consideration for releasing a lien. There is no evidence that Sutton had ever looked to his lien as a mode of enforcing payment, or ever intended to take the notes merely as additional or collateral security for his account, reserving their right to recur to it. He has indeed (as it appears in the result) acted without due caution; but that is no reason why the court should construe his acknowledgment of satisfaction, as not meaning, what it plainly purports to mean, or presume a contract different from that which he himself has executed.

GRIER, Circuit Justice. Taking the note of hand of the debtor is not per se legal satisfaction, unless there is evidence that the parties intended it should operate as such. Where the debtor has two securities, as in the present case, it will not be easily presumed, that he has voluntarily relinquished one of them, and that the best of the two. The giving the receipt for the notes, as in full of the account, it is true, is primâ facie evidence that such was the case. But a receipt is no estoppel; and when we consider how little attention is usually paid to the peculiar form or expressions of such documents, signed by mechanics, and drawn up by the clerks of the employer, such formal words may be easily rebutted, by showing the true nature of the transaction. The note taken is no higher a security than the account, and, unless the transaction shows an intention to surrender without consideration the better security, these formal words in a receipt, given when the account is settled, ought not to be considered as at all conclusive of an intention to receive the lesser security as satisfaction. The case of Jones v. Shawhan, 4 Watts & S. 263, is directly in point, and states the law as applicable to this case. The law as laid down in that case is this—a new note without a fresh consideration is not satisfaction of an open account, or of a preceding note unless it has been accepted as such: and though the presumption is, that a larger security is not exchanged for a smaller one, yet a receipt of the lesser security as "in full" is but evidence to go to the jury to rebut such presumption. But it is not conclusive, and when opposed by the presumption, it may be explained by showing that there was no contract to take the lesser security and release the better, and that the intention to accept it as satisfaction and relinquishment of another security, was not in the contemplation of the parties. In this case, the duty of finding these facts cannot be devolved upon a jury; and on a careful examination of the evidence, I am convinced that the libellant when he signed this receipt, had not the idea before his mind of releasing any security held by him. Nor did the officer with whom this settlement was made, contract for any such release, or that the note should be received in actual satisfaction.

In the 1st place, it does not appear that notes were demanded for the purpose of having a marketable security on which to raise money, or that they were used for that purpose. They are brought into court and surrendered. 2nd. The libellant called for a settlement of his account, not for the purpose of getting immediate payment by note, but to have the account settled and adjusted before the officers who had dealt with him, should send in their threatened resignation. The notes were given as evidence of the amount of the balance due on settlement, says the witness, "on account of the directors being about to resign." When the account was stated and adjusted with the president of the company, he ordered the clerk to draw these notes and take a receipt for them. No direction was given to the clerk in what form to draw the receipt either by the president or by Sutton. The clerk drew it in his usual form. Sutton signed it without criticising its form, or perhaps reading it. His object was to get his account settled, so that he might not have difficulty with the new officers of the corporation. No suggestion was made by either party, that these notes were either wanted to raise money on, or given as a favour, or received in satisfaction of any other security held by the mechanic. There was no consideration given, or intended to be given for the relinquishment of one of the mechanic's securities, nor did such an act enter into the contemplation of the parties at the time of their settlement. The clerk drew the receipt in the usual form in his receipt-book without any instruction from either party to put it in any particular form, and thus made it have an apparent effect which was not within the scope of the contract, or contemplation of the parties.

Upon a more careful examination of the case than I was able to give originally, I feel satisfied that a jury would have been justified in finding that it was not the intention of the parties to this settlement to give or receive their notes in satisfaction of the debt so as to relinquish the security on the vessel given by law to the libellants. Decree affirmed.