## KUHL *vs.* THE MAYOR AND COLLECTOR OF JERSEY CITY..

1. A party is not estopped by his acts or declarations from showing the truth, unless such acts or declarations were intended to influence the conduct of another, or he had reason to believe that they would influence the conduct of another.

2. A receipt for taxes on real property, given by a tax collector on receiving a check, does not estop him from showing that the check was unpaid, although a purchaser was induced by such receipt to pay the whole consideration. The collector did not give the receipt, knowing that it would be used for such purpose; nor does the mere giving of a receipt which is only a voucher of payment between the parties, and always liable to be disproved, raise the presumption that it will be used to defraud a purchaser.

This was an application for an injunction against the defendants, to restrain them from selling the lands of the complainant for taxes, at a sale for which they were advertised. The facts appearing by the bill and answer were, that the complainant purchased the lands in question of one Newkirk; that his counsel had procured a certificate from Love, the city collector, of the amount of taxes and assessments in arrear, being $1491.50. That on the day when the deed was delivered and the consideration paid, Newkirk went to the office of Love and paid the arrears by giving a check on a bank in Connecticut, which the collector received, and he thereupon receipted the several tax bills for these arrears. Newkirk took these to the office of complainant's counsel; on the faith of this receipt the deed was accepted, and the consideration paid to Newkirk; the check of Newkirk was not paid, and the defendants, who had entered these taxes and assessments as paid upon the proper books, canceled the entry and advertised the land for sale. There was no agreement to accept the check as absolute payment. The only receipt was the words, "Received payment. Jas. H. Love, Collector," at the foot of the bills. There was nothing to show that Love had notice of the use to be made of these receipts. The complainant's counsel deposes, in an affidavit annexed to the

bill, that when he asked for the search he told Love that a client of his was about purchasing the property. Love in his answer states that he had no recollection of this, either when he gave the receipts or at the time of the answer. The argument was on a rule to show cause upon the bill and answers of both defendants.

*Mr. J. F. Randolph, Jr.*, for rule.

*Mr. Dixon*, contra.

THE CHANCELLOR.

There is no dispute that these taxes are unpaid. A check taken in the manner in which this was received is no payment, if dishonored. As between the defendants and Newkirk the taxes are clearly not paid.

The complainant contends that the defendants are estopped as against him from denying the payment, because by the receipt given to Newkirk they induced him to pay the full consideration, and it will be inequitable now to permit them to show that the receipt was not true, and that the taxes are unpaid.

In considering the question, I shall assume that Love had no intention to mislead the complainant, or to induce him to do as he did, and did not know that these receipts were to be used for that purpose. The fact stated by the counsel of the complainant some time before, could hardly be recollected by a public officer, in the numerous applications of this kind that constantly are made to him. Even without the denial of all recollection in his answer, such recollection would not be inferred from this fact.

There is a seeming conflict among the numerous decisions on the doctrine of estoppels *in pais*, sometimes called equitable estoppels, whether any one will be estopped by a representation made, which turns out not to be true, where there was no intention to influence the conduct of any one by it, and where it was not apparent that the representation would have

that effect. I take the doctrine established, by the decided weight of authority, that there must be such intention, or that it must be so apparent that the representation will have that effect, that the intention must be presumed.

Lord Denman, in *Pickard* v. *Sears*, 6 *Ad. & Ell.* 469, lays down the rule "that where one by his words or conduct *willfully* causes another to believe the existence of a certain state of things, and *induces him* to act on that belief, the former is concluded."

Baron Parke, in *Freeman* v. *Cooke*, 2 *Exch.* 654, states that this rule, as laid down by Lord Denman, must be considered as established. He says: "By the term *willfully*, we must understand, if not that the party represents that to be true which he knows to be untrue, at least that he *means* his representation to be acted upon; and if, whatever a man's real intention may be, he so conducts himself that a reasonable man would take the representation to be true, and believe *that it* was meant that he should act upon it," it would estop.

Lord Campbell, in *Howard* v. *Hudson*, 2 *Ell. & Black.* 1, says it must be shown, "both that there was a willful intent to make him act on the faith of the representation, and that he did so act." And Justices Wightman, Erle, and Crompton take the same position in their opinions. All held that there must be an *intention* to influence.

Both Lord Chancellor Chelmsford and Lord Wensleydale, in their opinions in *Clark* v. *Hart*, 6 *H. L. C.* 633, approved of and applied the rule laid down in *Freeman* v. *Cooke*.

Chief Justice Nelson, in *The Welland Canal Co.* v. *Hathaway*, 8 *Wend.* 483, says: "A party will be concluded from denying his own acts or admissions which were expressly designed to influence the conduct of another, and did so influence."

In *Dezell* v. *Odell*, 3 *Hill* 222, Justice Bronson says, in adopting that view as his own, that "the learned judge did not lay down the rule with too much caution or with too many limitations." In the same case, Justice Cowen says: "We then have a clear case of an admission by the defendant in-

tended to influence the conduct of the man with whom he was dealing, and which did so influence it to his prejudice. This I understand to be the only definition of an estoppel *in pais.*"

In *Brown* v. *Bowen*, 30 *N. Y.* 519, Justice Mullin, in delivering the opinion of the court, in which all the judges concurred, says : " To establish an estoppel *in pais*, it must be shown that the person sought to be estopped has made an admission or done an act with the intention of influencing the conduct of another, or that he had reason to believe would influence his conduct."

In *Wilcox* v. *Howell*, 44 *N. Y.* 398, Commissioner Earl, in delivering the opinion of the court says the doctrine of estoppel *in pais* "is only applied to conclude a party by his acts and admissions intended to influence the conduct of another."

In *Turner* v. *Coffin*, 12 *Allen* 401, the court expressly held this doctrine and the decision turns upon it. The verdict was set aside because the court did not charge the jury that the plaintiff must have *willfully intended* that the silence and conduct on his part, should lead to action on the part of the defendant. This view is approved in *Pierce* v. *Andrews*, 6 *Cush.* 4.

In *Yawger* v. *Manning*, 1 *Vroom* 183, Justice Brown, in delivering the opinion of the court, says : " A plea of title, if an estoppel, must be such *in pais*, and on the ground of willful misrepresentation by defendants, on which the plaintiff was induced to act to his injury. There is no evidence of willful misconduct."

The American editors of Smith's Leading Cases, in their notes to *Den* v. *Oliver, Vol. II.* 643, 646, adopt this doctrine requiring an intention to influence, or that the influence must be clearly foreseen to create an estoppel ; and hold also, that a declaration to one man can rarely operate as an estoppel in favor of another.

This limitation is also clearly and positively laid down in *Herman's Law of Estoppel*, §§ 327, 331, 426.

If it was held that the collector or the city were estopped

by such a receipt, it would, of necessity, put an end to the convenient practice everywhere adopted, of paying taxes by checks; every tax-payer would be obliged to produce and count out legal tender notes. .

Tax receipts are only intended as evidence in favor of the tax-payer against the city, not as muniments or evidences of title. The defendant, Love, in this case, did not intend it as such, and this must have been known to the complainant. Simple receipts have always been held not to conclude the person giving them. They are not like commercial paper, negotiable, nor intended for such purposes; but, like a bond or mortgage, are subject to all equitable defences. The obligor of a bond might be held in like manner to have induced an assignee to take it; the bond being a representation that the obligor owed and would pay the money. This doctrine has never been applied to bonds or mortgages, and would change the entire status of them.

The giving this receipt by Love was not culpable negligence or carelessness; it was done according to the usual course of business, relying upon the rule that if the check was worthless the receipt was also of no validity, except to change the burden of proof. This was known to the complainant.

The injunction must be denied.