GEORGE B. SWAIN, appellant,

*v.*

WILLIAM R. FRAZIER, administrator, respondent.

1. Receipts, though *prima facie* evidence of discharge of an obligation, may always be explained and contradicted by other evidence.

2. Where receipts, upon a bond secured by mortgage, which purport to be of money, are shown to be of the obligor's unsecured promissory notes, the burden is upon him who claims the benefit of the discharge evidenced by the receipts, to show that such notes were accepted upon an agreement that they should operate to satisfy so much of the debt. The acceptance of notes for a pre-existing debt, will not operate to discharge such debt, unless it be agreed that such shall be its effect.

3. Such receipts, if expressed to be in full, would be evidence of an acceptance of the notes in satisfaction, unless explained; but if, in addition, it appear that the obligee was illiterate, of great age, and made her mark to the receipts, at the instance of the obligor, who drew them, and who was a near relative, in whom she would have a peculiar confidence, the person claiming the discharge will be required to establish that the obligee designed and intended thereby to satisfy the debt evidenced by the bond.

On appeal from a decree advised by Vice-Chancellor Van Fleet, whose opinion is reported in *Wildrick* v. *Swain, 7 Stew. Eq. 167.*

*Mr. Carl Lentz,* for appellant.

The bill in the above cause is filed to foreclose a mortgage, dated April 10th, A. D. 1850, and signed by Abraham Wildrick and Isaac Wildrick, and marked "Exhibit B on part of complainant." The mortgage was given to secure payment of a bond made

Swain *v.* Frazier.

by Abraham Wildrick and Isaac Wildrick to Susan Wildrick, in the sum of $2,000, to secure an annuity of $120 during her life, and which bond is marked "Exhibit A on part of the complainant."

On the 12th day of August, A. D. 1881, an interlocutory decree was signed in this cause, ordering and decreeing a reference to ascertain the amount due to the complainant, and directing that in computing the amount due on the complainant's mortgage, only such payments as were made in cash are to be credited thereon, and not those made in notes.

I. The mortgagee agreed to accept the notes as absolute payment.

It is always a question of intention, sometimes to be ascertained by the legal construction and effect of written instruments, sometimes by the circumstances of the case. *Schanck* v. *Arrowsmith*, *1 Stock. 314.*

Where a note was given for the amount of interest accrued on a mortgage, together with a further loan made at that time, and an endorsement was made on the mortgage note, "received on the within, interest up to date," and there was evidence that the note was intended by the parties to be taken in payment of the interest, it was held that such interest was no longer secured by the mortgage. *2 Jones on Mort.* § *923, and note 2.*

A mortgage is security only for the debt thereby secured, and cannot be held for other debts from the mortgagor, even as against him; and the mortgagee will be compelled to discharge the mortgage upon the payment of that debt. *Beardsley* v. *Tuttle, 11 Wis. 74; Morse* v. *Vail, 2 Beas. 295; 2 Jones on Mort.* §§ *918, 931.*

*Mr. L. Dewitt Taylor*, for respondent.

I. The decree advised by the vice-chancellor should be affirmed, because the answer and the evidence show clearly that the money agreed to be paid, according to the condition of the bond, has not been paid.

II. That the receipts signed on the bond do not represent payments in cash.

III. That Susan Wildrick never received or accepted the notes given for the annual payments on the bond (which bond was intended to provide an equivalent for the mortgagee's interest as dowress in the lands mortgaged), in satisfaction of the annual payments due on the bond, and the lien of the mortgage is in full force.

IV. That there is no settlement proved to have taken place between complainant and defendant, at which time, as alleged in the answer, it was ascertained there was due $452.27 on the bond. in suit.

V. That there can be no estoppel in this case, as defendant, Swain, is one of the grantees named in the deed (Exhibit No. 4), dated June 1st, 1874, for a part of these premises, and October 6th, 1875, conveys the mortgage premises to Charles B. Thurston; and this conveyance contains this language: "This conveyance is made subject to certain encumbrances now liens on said premises."

The notes given for the annual payment did not operate as a discharge or satisfaction of the debt, and the acceptance of them cannot have that effect, as there is no proof that they were accepted as a discharge or satisfaction of the debt. *Schanck* v. *Arrowsmith, 1 Stock. 314; Hutchison* v. *Swartsweller, 4 Stew. Eq. 206; Byles on Bills (6th ed.) 571; 1 Smith's Lead. Cas. 616; 2 Jones on Mort.* §§ *924, 926; Freeholders of Middlesex* v. *Thomas, 5 C. E. Gr. 41.*

New York authorities hold the same view, and go farther, and hold that the acceptance by a creditor of a new promise from his debtor, to pay a pre-existing debt, affords no defence whatever to a suit on the original cause of action, even if the creditor expressly promised that the new promise should operate as a satisfaction of the old. *Frisler* v. *Larned, 21 Wend. 452; Rice* v. *Dewey, 54 Barb. 455.*

If the administrator was advised to ignore the notes and prose-

cute the bond and mortgage, he did just as numerous authorities hold he may ·do. *Cumber* v. *Wane, 1 Smith's Lead. Cas. 616.*

The delivery of the notes, under the circumstances in this case, to the mortgagee, did not discharge the mortgage. No change in the form of indebtedness—nothing short of actual payment of the debt or an express release, will operate to discharge the mortgage. *2 Jones on Mort.* § *924.*

Recovery of judgments on the notes cannot avail the defendant in this case, as it is not a defence made by the answer. The defendant must abide by the case made by his answer, and not be permitted to take advantage of another case made by the proofs. *Mead* v. *Coombs, 11 C. E. Gr. 173; Chandler* v. *Herrick, 3 Stock. 497.*

Nevertheless, the merger of the notes in judgment does not extinguish the debt, and the mortgage continues a lien till it is satisfied or the judgments are barred by the statute of limitation. *2 Jones on Mort.* § *936 ; Flanagan* v. *Westcott, 3 Stock. 264.*

The opinion of the court was delivered by

MAGIE, J.

The decree appealed from was made upon a bill filed to foreclose a mortgage given by Abraham and Isaac Wildrick to Susan Wildrick, now deceased, of whose estate respondent is administrator. The mortgage is dated April 10th, 1850, and it secured the bond of Abraham and Isaac Wildrick to Susan Wildrick, in the penalty of $2,000, conditioned that the obligors should pay her $120 and should furnish her a stipulated amount of firewood in each subsequent year of her life. She lived until August 3d, 1875, having then attained the age of one hundred and one years.

The bill is in the ordinary form, except that it charges that said bond was endorsed with various receipts for payments thereon, which payments· are stated not to have been made in money, as shown by the receipts, but by the promissory notes of the obligors. It is charged that such notes have never been

paid, and that the sums represented thereby yet remain due upon the bond. The answer was called for without oath.

The appellant Swain, who was a defendant to the bill as owner of some of the mortgaged premises, answered and admitted that $350 was due upon the bond, which amount he claimed was ascertained to be due on May 6th, 1876, in a settlement then had between him and respondent. He also claimed that the notes of the obligors, taken from time to time, when the receipts were endorsed on the bond, were in fact accepted by Susan Wildrick as actual payments in discharge of so much of the moneys due on the bond.

Upon the issue thus formed the conclusion arrived at in the court below was adverse to the claim set up in the answer. A decree was made establishing the right of the complainant below to a foreclosure and sale of the mortgaged premises to raise not only the amount admitted by the answer to be due on the bond, but also the amount represented by notes of the obligors, given for moneys due to the obligee upon the bond, and a reference was directed to ascertain the amounts so due. From this decree the defendant Swain appealed.

Upon the argument here, the counsel of appellant did not contend that the vice-chancellor, before whom the case was heard, erred in the legal principles he applied. The sole ground relied on for reversal is the alleged error in the deductions of fact he made from the evidence.

Some of the legal principles laid down by the vice-chancellor are so elementary that it is unnecessary to do more than state and approve them. That receipts, although *prima facie* evidence of payment and acquittance of a debt, are always open to explanation and contradiction by any kind of appropriate evidence, is a proposition too well settled to admit of discussion. It is no less undoubted law that an estoppel against the enforcement of an obligation will not arise upon receipts untruthfully acknowledging satisfaction thereof, unless it appear that the person claiming the estoppel has been induced, by knowledge of such receipts, to place himself in a position or to adopt a course

of conduct which would render it inequitable to enforce against him the obligation thus apparently satisfied.

The vice-chancellor further held that the acceptance of the promissory note of a debtor for his pre-existing debt, will not operate as a discharge or satisfaction of the debt, unless the creditor agrees that such shall be its effect. The question involved in this proposition, though much discussed elsewhere, is now for the first time, so far as I can ascertain, presented for the consideration of this court, and it may be well to briefly consider it.

The question is not a new one in the courts of this state. In 1853 Chancellor Williamson held that, whether a note given for a legacy, charged upon land of the maker, was to operate in payment of the legacy or not, was a question of the intention of the parties to the transaction. *Schanck* v. *Arrowsmith, 1 Stock. 314.* In *Shipman* v. *Cook, 1 C. E. Gr. 251,* Chancellor Green seems to admit the same rule as unquestionable. In *Freeholders* v. *Thomas, 5 C. E. Gr. 39,* Chancellor Zabriskie said that it was well settled that a note, either of the debtor or a third person, received for a debt, is not payment, if not itself paid, except in cases where it is positively agreed to be received in payment. The same principle was applied by Vice-Chancellor Van Fleet in *Hutchinson* v. *Swartsweller, 4 Stew. Eq. 205.* Under such circumstances it would be questionable whether, if there were doubts respecting the rule, it would be wise at this day to attempt to modify or reverse it.

But the rule is sustained by the great weight of authority in England and in this country. Mr. Addison so states the rule to be established in his work on Contracts, and the English cases may be found collected in the notes to section 333 of Morgan's edition. The American cases are collected in the note to *2 Pars. on Cont. *624, *681,* and in the notes to *Tobey* v. *Barber, 2 Am. Lead. Cas. 179,* and to *Cumber* v. *Wane, 1 Smith's Lead. Cas. 445.* Later cases will be found in *Bigelow on Bills and Notes 499.* According to the nearly unanimous doctrine of these cases, a creditor may agree to accept a new promise of the debtor in satisfaction of a pre-existing debt.

A different doctrine has been enunciated in the courts of New York. In the case of *Waydell* v. *Luer, 5 Hill 448*, it was declared that the acceptance of a new promise could not be permitted to operate in discharge of a pre-existing debt, even in cases where the creditor had expressly agreed that such should be its effect. This proposition was supported by a very ingenious and able opinion of Judge Cowen. The case was afterwards reversed in the court of appeals (*3 Den. 410*), but on the point in question the opinions were so divided that the reversal does not seem to have shaken the authority of Judge Cowen's opinion. It was approved in the case of *Hill* v. *Beebe, 13 N. Y. 556*. The late case of *Feldman* v. *Beier, 78 N. Y. 293*, seems to indicate, but does not directly express, a modified view.

The doctrine of the New York cases not only stands opposed by the whole current of decision elsewhere, but seems to be unsupported by any substantial reason. The ground on which their conclusion is put is, that the agreement of the creditor to accept a new promise is one without consideration. This is inconsistent with the view adopted by the same courts and by the same judge respecting a similar transaction. Thus, in *Myers* v. *Welles, 5 Hill 463*, Judge Cowen held that the acceptance of the debtor's own obligation, payable at a future day, is a sufficient consideration for, and amounts to a suspension of the remedy on the original debt, so as to discharge a surety. It will be difficult, I think, to discover any ground to support both these decisions. As was said by Redfield, J., in *Babcock* v. *Hawkins, 23 Vt. 561*, there is no want of consideration in any case where one contract is substituted for another. Any other view is a mere technical and unnecessary restraint on transactions between debtor and creditor. "Sound sense would seem to permit an obligee to liquidate his damages, and by accord to take whatever he might please to take in satisfaction of them." *Morris Canal* v. *Van Vorst, 1 Zab. 109*.

The rule on this subject applied by the vice-chancellor seems, therefore, to be entirely satisfactory.

Turning to the evidence, the vice-chancellor seems justified in the conclusions he reached. The case discloses that the bond,

when produced, bore upon it thirteen receipts, the first dated April 1st, 1854, and the last April 1st, 1868, to all of which the mark of the obligee was affixed. All but one of them were attested by witnesses. All expressly acknowledge the receipt of money, either " in full," " in full up to this date," or for a specified year. Four other receipts, dated on April 1st of the years 1869, 1870, 1871 and 1872, are also endorsed on the bond, expressed in a similar manner, but these have not been executed.

Upon proof of the execution of these receipts, if they remained unexplained and uncontradicted, no decree could have been made to include the money represented thereby. But they are not unexplained. They are contradicted. Besides other testimony, the evidence of Isaac Wildrick, one of the obligors who was called by the appellants, renders it entirely certain that the obligee did not receive the money which the receipts acknowledged. He admits that he, acting for himself and the other obligor, who was his brother, gave to the obligee for much the larger part of the sums annually accruing on the bond, the notes of himself and his brother. He substantially admits that their notes, amounting to over $2,600, which were in obligee's possession when she died, were almost entirely composed of the notes given her for the annuity secured by the bond and mortgage, or renewals of such notes. These remain outstanding and unpaid.

This proof contradicts the receipts and deprives them of probative force. Unless, therefore, it further appears that the obligee agreed to accept the notes in satisfaction for the amounts due on the bond, it will not be treated as satisfied thereby. The burden of convincing the court that such an agreement was made, rested upon the appellant.

If these instruments had acknowledged the receipt of the notes in full for the amounts due on the bond, they would, undoubtedly, be *prima facie* evidence of their acceptance in satisfaction. In their present shape, unexplained, they would produce a like effect. Such was the view taken by Chancellor Williamson in *Schanck* v. *Arrowsmith, supra.* But he held that this presumption might be overcome, either by positive testimony or

by circumstances. In the case of *Sutton* v. *The Albatross, 2 Wall. Jr. 327*, Judge Grier held that a lien was not necessarily discharged by taking a note and giving a receipt in full. Such a receipt could be explained by showing, negatively, that there was no contract or contemplation to discharge the lien, or by showing positively, by even slight facts, a different purpose that induced the transaction.

In this case the evidence does not leave the receipts capable of raising the presumption of an acceptance in satisfaction. Besides the fact that they do not express the real thing received, it appears that the obligee was a woman of great age; that she was illiterate; that the obligors, or one of them, drew the receipts and they were executed at their instance; and that they were step-sons of the obligee, in whom she would naturally confide. These considerations are quite enough to deprive the receipts of that evidential force which they would otherwise be entitled to. When such circumstances are shown, it is manifest that the appellant was bound to convince the judgment of the court that the obligee understood the transaction and intended thereby to accept the unsecured obligations of her debtors in complete satisfaction for so much of her annual stipend, before then secured by a good bond and mortgage.

A careful examination of the evidence is convincing that, while there is not the slightest ground to impute to the obligors an intention to deprive the obligee of the security of the mortgage, there is nothing to show that she ever understood that the receipts, if unexplained, might have that effect. Not a single word or act of hers has been proved justifying the conclusion that she had, in fact, agreed to accept the obligor's notes in satisfaction of her bond, and to surrender the security she held therefor. It is apparent from the testimony of Isaac Wildrick that the old lady was of a careful and saving disposition, and desirous of accumulating what she could save out of her income. Other evidence shows that she designed her savings for the benefit of her own and only child. She consequently accepted such part of her annual stipend as she required, in money. For the balance she took notes, for the express purpose of saving it for

Swain v. Frazier.

distribution after her death.   This is not only entirely consist-
ent with her intending to retain thereon the security of the
mortgage, but would seem inconsistent with an intention to sur-
render a security for such savings.   The whole testimony fails
to convince that the obligee ever understandingly agreed to sur-
render the security or to accept these notes in satisfaction of the
bond.

With respect to the claim of appellant that the respondent is
estopped from enforcing this mortgage because of an alleged
settlement between them at which only $350 was claimed to be
due on the bond, it is sufficient to say that there is no evidence
to support it.   The appellant became purchaser of the mort-
gaged premises after almost all the receipts were endorsed on the
bond.   He was told by Isaac Wildrick, previous to his purchase,
that the amounts accruing on the bond had been settled up to 1872.
He is not shown to have inquired of deceased whether that was
true, nor how the settlement had been made.   He does not ap-
pear to have been informed of the receipts.   There is some evi-
dence of a conversation between him and respondent, at which
the latter made no claim that the amount of the unpaid notes
was due on the bond.   There is nothing to fix this as occurring
before appellant's purchase; on the contrary, the inference is that
it was afterwards.   Therefore, there was nothing in the conduct
of deceased or her representative which induced him to pur-
chase or adopt any course of conduct so as to render it inequita-
ble to permit the mortgage to be enforced.

The decree below ought to be affirmed, with costs.

*Decree unanimously affirmed.*