BEALL v. HUDSON COUNTY WATER CO.

(Circuit Court, D. New Jersey. February 14, 1911.)

1. PAYMENT (§ 16*)—NOTE FOR PRE-EXISTING DEBT.

Acceptance of a note for a pre-existing debt does not discharge or satisfy the debt, unless it is so agreed.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 63–69; Dec. Dig. § 16.*]

2. LIENS (§ 16*)—DISCHARGE—ACCEPTANCE OF NOTE.

Acceptance of a note for a pre-existing debt does not discharge a lien in favor of such debt unless clearly so intended.

[Ed. Note.—For other cases, see Liens, Cent. Dig. §§ 8–16; Dec. Dig. § 16.*]

3. BILLS AND NOTES (§ 28*)—"PROMISSORY NOTE."

A "promissory note" is a promise to pay.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 40; Dec. Dig. § 28.*

For other definitions, see Words and Phrases, vol. 6, pp. 5676–5681; vol. 8, p. 7767.]

4. PAYMENT (§ 16*)—BILLS AND NOTES.

Ordinarily, there is no payment of a debt evidenced by a note, if the note itself is not paid.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 63–69; Dec. Dig. § 16.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. PAYMENT (§ 67*)—BILLS AND NOTES—BURDEN OF PROOF.
The burden of proof is on one claiming discharge of a pre-existing debt by a note to clearly show that such was the intention.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 189–194, 198; Dec. Dig. § 67.*]

6. EVIDENCE (§ 408*) — TESTIMONY AFFECTING RECEIPTS — ADMISSIBILITY — "WRITTEN AGREEMENT."
Receipts are not within the rule prohibiting oral evidence to vary or contradict a "written agreement."

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1829–1842; Dec. Dig. § 408.*]

7. WORDS AND PHRASES—"SETTLEMENT."
The term "settlement" does not necessarily mean payment or satisfaction, though it may mean that; it frequently meaning adjustment, arrangement.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, pp. 6446–6450.]

8. PAYMENT (§ 73*)—EVIDENCE—SUFFICIENCY.
Evidence *held* to show that a renewal note was not accepted as such payment of a pre-existing debt for machinery sold conditionally as discharged the reservation of title.

[Ed. Note.—For other cases, see Payment, Cent. Dig. § 232; Dec. Dig. § 73.*]

9. SALES (§ 477*)—CONDITIONAL SALE—PAYMENT.
That a note given for its entire contract price, payable in three installments, was accepted before two of such installments became due, does not make the debt any less a pre-existing one as affecting the question of discharge of a reservation of title under the sale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1411–1417; Dec. Dig. § 477.*]

10. WORDS AND PHRASES—"PRE-EXISTING DEBT."
The term "pre-existing debt" includes all debts previously contracted, whether they have become payable or not.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, p. 5497.]

11. SALES (§ 477*)—CONDITIONAL SALES—RIGHTS NOT WAIVED.
That a conditional seller did not retake the property on the buyer's default and accepted a renewal to accommodate the buyer did not waive his rights.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1411–1417; Dec. Dig. § 477.*]

In Equity. Suit by Turner A. Beall against the Hudson County Water Company. On petition by Henry R. Worthington for possession of machinery in the custody of receivers. Petition granted.

Pierre F. Cook, for petitioner.

McCarter & English, for receivers of defendant.

RELLSTAB, District Judge. The question in this case is one of fact. The petitioner seeks the return of an engine and appurtenances installed in the defendant's works under a written contract. The defendant was to pay therefor the sum of $16,000 in cash in three equal installments; the last when a test of the engine had demonstrated its required efficiency. The title to such property was to remain in the

petitioner until final payment; the agreement in that behalf containing the following provision:

"It is understood and agreed by both parties hereto that title and ownership of the said pumping engine and appurtenances shall remain with the party of the first part until the full and final payment shall have been made by the party of the second part."

The agreement also provides:

"No modification or alteration of the conditions and agreements of this contract shall be made except with the written consent of both parties hereto."

The defendant defaulted in the first payment which came due on October 9, 1909. On the 18th of December, 1909, within one week of when the second payment was due, defendant gave its three months' promissory note to petitioner for the entire contract price. Upon maturity, this note was renewed for the entire amount; the interest only being paid. Before the maturity of the renewal note, the defendant became insolvent and passed into the hands of receivers appointed by this court. The question to be determined is whether the acceptance of such note was a payment and divested the petitioner of the title to such property.

The following are deemed to be settled law: The acceptance of a promissory note from a debtor for a pre-existing debt will not operate as a discharge or satisfaction of the debt, unless it is agreed that such shall be its effect; nor will it discharge a lien in favor of such debt unless it clearly appears that such discharge was intended. A promissory note, as its name implies, is but a promise to pay, and, ordinarily is no payment if it is not itself paid; but it may amount to payment if the creditor so intended. Such intention, however, is not to be resolved against the creditor except by clear and convincing evidence. The burden of proof is upon him who claims the benefit of such discharge. Receipts are not conclusive; they are not within the inexorable rule prohibiting the introduction of oral evidence to vary or contradict the terms of a written agreement; they may be explained and even contradicted. Peter v. Beverly, 35 U. S. 532, 567, 9 L. Ed. 522; Sutton v. The Albatross, 2 Wall., Jr., 327, 23 Fed. Cas. 465, No. 13,645; The Kimball, 70 U. S. 37, 18 L. Ed. 50; Atlas S. S. Co. v. Colombian Land Co., 102 Fed. 358, 42 C. C. A. 398; Swain v. Frazier (E. & A.) 35 N. J. Eq. 326; Campbell Mfg. Co. v. Rockaway Pub. Co. (E. & A.) 56 N. J. Law, 676, 29 Atl. 681, 44 Am. St. Rep. 410; American Brick Co. v. Drinkhouse, 59 N. J. Law, 462, 36 Atl. 1034; Taylor v. Wahl, 72 N. J. Law, 10, 60 Atl. 63.

In the present case, the evidence shows that the defendant was not able to meet the first payment, and that, after demand was made upon it, Mr. Beall, its president, sought and obtained an interview with Mr. Arnold Tanzer, the assistant treasurer of the petitioner to secure an extension of time. This interview took place at the petitioner's office. The defendant offered to give a 90 days' note for the amount of the first payment. In the negotiations concerning such offer, the petitioner called attention that the second payment would be due within a week, and the final payment before the note matured, and suggested that a note be given for the entire amount. This was agreed to, and

subsequently such note was offered and accepted; it, together with the statement of the defendant's account previously rendered, was passed into the office of the petitioner's cashier, whence the statement was returned with the following receipt indorsed thereon by said cashier:

"December 18, 1909.

"Received note payable in three months with interest in settlement of above. Henry R. Worthington.

"A. D. Chue, Cashier."

This was substantially all that took place with reference to the giving and accepting of the note. Nothing was said about the title to the property. The receipt, it is to be observed, is not an unqualified one in settlement of the account, for it refers to the receiving of a note in settlement; but, if it had been unqualified, it would not, under the cited cases, be conclusive. The term "settlement" does not necessarily mean payment or satisfaction, though it may mean that. It frequently means adjustment, arrangement. Cent. Dic. & Cyc. Toombs v. Stockwell, 131 Mich. 633, 92 N. W. 288; Lynch v. Nugent, 80 Iowa, 422, 429, 46 N. W. 61.

A careful examination of the evidence in this case forces the conviction that the acceptance of this note was not a payment, but rather a new arrangement for payment to accommodate the defendant; to relieve it of its default in the first payment and its obligation to make the second when due, and to give it an extension of time during which the terms of the agreement relating to payments were suspended.

The cashier who wrote and signed the receipt had no instruction to accept the note in satisfaction of the debt. There is no evidence that warrants the conclusion that the cashier had any authority to annul or modify the terms of such agreement, or even that he had knowledge of its terms. His conduct in relation thereto reflects a method of bookkeeping—the closing of an open account by a transfer to bills receivable—rather than a purpose to discharge the debt. It is a matter of some doubt, in view of the quoted clause of the contract prohibiting the modification or alteration of the conditions and agreements therein, except by the written consent of the parties thereto, that the petitioner could not have repudiated the note transaction. But assuming that the assistant treasurer had authority to extend the time of payment, and knew the wording of the receipt given by the cashier, at the time it was made—a knowledge which he denies—the utmost effect that can be given to this whole transaction is that the taking of the note was solely for the accommodation of the defaulting defendant. It was the inability of the defendant to make its payments as agreed that brought up the matter of the giving of a note; and there is nothing in the evidence that shows an intention to alter any of the provisions of such written agreement, except those which relate to the manner and time of the payments. Mr. Beall himself testified that the giving of such note did not absolve the petitioner from making the test of efficiency of the engine, etc., or release its guaranty in that behalf, required by the written agreement. Nor, in my opinion, did the taking of such promissory note by the petitioner abrogate the

"reservation of title" clause, or amount to such a final payment as was expressly required by the written agreement, before the title passed to the defendant.

Nor does the fact that this note was accepted before all the payments under the contract were due make the indebtedness any less a pre-existing one. The note did not create the debt; nor was it given at the time of its creation, but long subsequent thereto. Before, as well as at, the date of the note, the debt which it promised to pay existed, and it never lost its character as a pre-existing debt, because only one of the three-payment installments was overdue. The words "pre-existing debt," in their natural meaning, include all debts previously contracted whether they have become payable or not. In re Fletcher, 136 Mass. 340. Upon the default in payment petitioner could have retaken the property. That it did not do so, but on the contrary indulged the defendant, giving it more time to pay, cannot work a divestiture of title, for that would be to annul an important provision of the written agreement embodied therein solely for the petitioner's protection—a result in no way contemplated in the acceptance of such note.

The petitioner is entitled to the possession of such engine and appurtenances, and the order prayed for is granted.