On January 18th, 1924, the defendant assigned a bond and mortgage to the complainant, which had been given to it by *Page 463 
Salvatore and Bernarda Scicchitano on January 3d 1924; and, by a separate agreement in writing, it guaranteed to her the payment of the principal mentioned in the instruments, as well as interest thereon, at the rate of five per cent. In the agreement of guarantee, the complainant authorized the defendant to collect the principal and interest as, and when, it became due, and directed that the proceeds be paid to her. On January 31st, 1939, the defendant collected from the mortgagors in cash, the sum of $173.18, and by check, the sum of $511.22; the total of which covered the balance due on account of the principal, and interest. On February 6th, 1939, the defendant wrote to the complainant telling her that the mortgage had been paid, and requested her to call at its office and bring with her the bond and mortgage, and such papers as she had relating thereto, whereupon she would receive the amount due her. On February 9th, 1939, George A. McIlroy, the complainant's husband, delivered to the defendant the bond, mortgage, and the assignment of the mortgage, in return for which he received from the defendant its treasurer's check in the sum of $700.62 in full payment of the principal and interest. On February 11th, 1939, Louis A. Reilly, commissioner of banking and insurance of the State of New Jersey, took control of the defendant's business, because of its insolvency.
The complainant by this proceeding seeks to establish a priority for the $700.62 aforesaid.
The complainant contends that she delivered the bond and mortgage to the defendant with the understanding that it was to act simply as bailee, trustee, custodian, or escrow depository — to pay her the amount aforesaid in cash.
The complainant had a bank account with the defendant company. There was no direction from her to the defendant that the proceeds of the mortgage were to be credited to her bank account; nor did the defendant give her such credit.
The defendant here argues that the complainant, in order to obtain priority, is obliged to trace, or identify, the money received by it on account of the mortgage, among its general assets; that she was given an unconditional credit upon its *Page 464 
books; and, consequently, that the relationship between her and the bank is that of debtor and creditor. Acuntius v. SteneckTrust Co., 111 N.J. Eq. 81; 161 Atl. Rep. 349.
If the defendant collected the moneys due under complainant's bond and mortgage and by directions from complainant credited the proceeds to her bank account, unquestionably the relationship of debtor and creditor would thereby have been created, and the complainant would then be in the position of a mere general creditor. Maurello v. Broadway Bank and Trust Co.,114 N.J. Law 167; 176 Atl. Rep. 391; Jacobson v. Slaughter, 117 N.J. Eq. 252; 175 Atl. Rep. 278; Acuntius v. Steneck Trust Co., supra.
But that is not the situation in the instant case. The complainant was directed by the defendant company to produce her bond and mortgage and incidental written instruments. She did as directed. In return for her compliance, she received from the defendant its treasurer's check for the amount collected by it. The proceeds of the collection never went into complainant's bank account. The facts all lead to the conclusion that the bank was acting as a bailee or trustee for the complainant in this one transaction; and any application of the fund by it, other than as a mere segregated bailment, trust, or custody account, in the circumstances, is, in legal effect, a wrong. It was not empowered to place, or mingle, the complainant's money with other moneys it held as deposits or otherwise.
The following cases have an aspect not unlike the present situation, and the principles involved in them aptly apply to the instant case. Prudden Co. v. First National Bank ofSecaucus, 115 N.J. Eq. 365; 170 Atl. Rep. 860; Borough of Deal
v. Asbury Park and Ocean Grove Bank, 118 N.J. Eq. 297;178 Atl. Rep. 790; De Maio v. Steneck Trust Co., 114 N.J. Eq. 25;168 Atl. Rep. 224; Nash v. Second National Bank of Red Bank,67 N.J. Law 265; 51 Atl. Rep. 727; Orifice v. Elizabeth Trust Co.,116 N.J. Law 110; 183 Atl. Rep. 192. (To like effect is the case of Hopper v. New Jersey Title Guarantee and Trust Co., decided in this court on May 25th, 1939, by Vice-Chancellor Fielder, but which is unreported, and is now on appeal to the court of errors and *Page 465 
appeals.) The law is similarly well settled in other states: Inre International Milling Co., 259 N.Y. 77; Van Alen v. AmericanNational Bank, 52 N.Y. 1; Brown v. Spohr, 180 N.Y. 201, 212;Central National Bank v. Connecticut Insurance Co.,104 U.S. 54; Mississippi Valley Trust Co. v. West St. Louis Trust Co.,App. 103 S.W. Rep. 2d 529; Shell Petroleum Co. v.Sturdivant Bank, App. 87 S.W. Rep. 2d 1064; Upper HudsonRye Flour Mills, Inc., v. Broderick, 259 N.Y. 635; People v.Bank of Dansville, 39 Hun. (N.Y.) 187; State, ex rel.Sorenson v. Farmers' State Bank, 125 Neb. 427;250 N.W. Rep. 557; In re Riverton State Bank, 47 Wyo. 469; 38 Pac. Rep. 2d603.
In the case of Hopper v. New Jersey Title Guarantee andTrust Co., supra, unreported as aforesaid, I use part of the language of Vice-Chancellor Fielder expressed therein, because it aptly illustrates and equitably meets the principles herein involved. It is:
"Hopper at that time had a deposit account or a special account with the title company, and his instructions were in effect `I don't want my share of the proceeds of the sale of this stock credited to my account. I want my share of the proceeds held until I come and call for it.' That was an instruction to the title company to segregate the proceeds, after satisfying Hopper's indebtedness, from other funds of the bank.
"The title company failed to comply with his direction. It acted in legal bad faith (not in actual bad faith, of course) in taking Hopper's money and putting it with other money the bank received from other sources."
In his conclusions, the vice-chancellor also said:
"It [the bank] was complainant's agent for sale of his stock and for collection of the proceeds and having fulfilled its agency, it held the proceeds in trust for complainant, but it acted in legal bad faith in disregarding complainant's instructions, by mingling his money with other bank funds and certainly by its improper act it could not change its trust relationship with complainant into the ordinary relation of debtor and creditor. *Page 466 
"Besides a trust impressed by general equitable principles on the funds claimed by complainant, R.S. 6-17(3) expressly imposes a trust thereon.
The complainant directs attention to the Bank Collection code,R.S. 7:6-17(3), which she says sustains her position. It reads:
"Where an agent collecting bank other than the drawee or payor shall fail or be closed for business as above, after having received in any form the proceeds of an item or items intrusted to it for collection, but without such item or items having been paid or remitted for by it either in money or by an unconditional credit given on its books or on the books of any other bank which has been requested or accepted so as to constitute such failed collecting or other bank debtor therefor, the assets of such agent collecting bank which has failed or been closed for business as above shall be impressed with a trust in favor of the owner or owners of such item or items for the amount of such proceeds and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank."
The Bank Collection code, which is part of the Uniform act (7:6-2), has been adopted in several states. It has been in force in this state for approximately ten years. Before the enactment of our Revised Statutes of 1937, it was known asPamph. L. 1929, ch. 270, and was entitled "An act to expedite and simplify the collection and payment by banks of checks and other instruments for the payment of money."
In Prudden Co. v. First National Bank of Secaucus, supra, Vice-Chancellor Fielder said:
"Beside the trust impressed on the funds by general equitable principles, the 1929 statute" (re-enacted as above quoted) "expressly impressed a trust thereon in favor of complainant. * * * the statute declares that in the situation here present, a preference exists in favor of the owner of the fund, no matter that the fund has been mingled with other assets held by the defendant and cannot now be traced or identified. Therefore there must be a decree for complainant." *Page 467 
In George F. Malcolm, Inc., v. Burlington City Loan andTrust Co., 115 N.J. Eq. 227; 170 Atl. Rep. 32, Vice-Chancellor Backes declared:
"The preference is claimed under the `Bank Collection code.' * * *
"When the Burlington bank as collecting agent of the complainant, collected the item * * * a trust arose, and the fund came into the possession of the banking commissioner the next day, bound by the trust.
"* * * The funds in the banking commissioner's hands now are as they were when the trust arose. Creditors cannot complain; their dividends may be lessened, but their rights will not be impaired. The trust fund will not be taken from them; it was never theirs. * * *
"The complainant is entitled to a decree declaring the trust, and the banking commissioner will be ordered to pay the amount with earned interest."
In the instant case no money was paid complainant by the defendant. The treasurer's check which she received from the defendant is not "money" in the language of the statute. It is quite evident that a check does not amount to payment if it is not honored and its payment is refused. Kuhl v. Jersey City,23 N.J. Eq. 84; Joslin v. Giese, 59 N.J. Law 130;36 Atl. Rep. 680; Swain v. Frazier, 35 N.J. Eq. 326; Weisberger v. J.G.Corporation, 107 N.J. Eq. 61; 151 Atl. Rep. 612.
If, as above observed, an unconditional credit were given on the books of the bank, then the complainant would have no right to a priority. But no such credit was given her by the issuance and delivery of the dishonored treasurer's check. This point is emphasized by the New York court of appeals in the matter ofInternational Milling Co., supra, as follows:
"To say that by crediting the proceeds to petitioner's account on the books of the bank and commingling the proceeds of the collection with the general funds of the bank changed the relation between the parties from that of bailor and bailee to that of creditor and debtor would be to give effect to a positive breach by the bank of its contract and to *Page 468 
make binding upon the petitioner acts which it specifically contracted against but over which it had no control.
 * * * * * * *
"Petitioner did not accept an unconditional credit and thereby become a general creditor. In receiving and presenting the cashier's check, petitioner did nothing more than to co-operate with the bank in the attempted delivery of the proceeds of the collection.
"It did nothing to cause the bank to change its position, and did not estop itself from insisting upon compliance with the terms of its contract. * * *
"As the bank was a bailee and not a debtor as to the fund in question, there can be no doubt as to petitioner's right, under the section quoted to claim a preference. To hold that the section excludes petitioner from claiming the identical fund as bailor would, in the event the assets should prove insufficient to meet the claims of preferred creditors, amount to a confiscation of petitioner's property without due process of law. Such a construction would make the statute unconstitutional and is unnecessary because the statute contains no words evidencing an intent that it should exclude existing remedies."
Under all the circumstances, I feel that the complainant is entitled to the relief prayed for and I shall so advise. *Page 469