NETTIE J. MAURELLO, PLAINTIFF-APPELLANT, v. BROAD-
WAY BANK AND TRUST COMPANY OF PATERSON, DE-
FENDANT-RESPONDENT.

Argued October 17, 1934—Decided January 10, 1935.

For the appellant, *Peter Cohn.*

For the respondent, *Louis J. Cohen.*

The opinion of the court was delivered by

CAMPBELL, CHANCELLOR.   This is an appeal from a judg-
ment in favor of the defendant bank, entered upon a directed
verdict.

The plaintiff had been a depositor and customer of the
Labor Bank of Paterson, which institution had not opened

for business after the "bank holiday" declared March 4th, 1932. Prior to that date she had issued checks against her account in that bank in payment of merchandise and other business claims, which checks, because of the closing of the bank, and its remaining closed, had not been paid. She was desirous of paying these claims, and, in fact, in the conduct of her business it was necessary that they should be, and further that she should have a sound and solvent bank with which she could do business. With this situation and condition confronting her, she, with her husband, went to the defendant bank and discussed the matter with its vice-president, to whom she says she made known the predicament in which she then was and she and her husband say that this officer of the defendant bank was informed that she desired to open an account or make a deposit from which to meet checks drawn thereon in replacement of the checks drawn upon the Labor bank which had not been paid. What took place at the time of the opening of the account is shown by the testimony of the plaintiff and her husband and the vice-president of the bank.

A careful examination of the proofs of the plaintiff and her husband shows that after making known the situation they were in, caused by the closing of the Labor bank and the outstanding unpaid checks upon it, they also made known that with some money they had borrowed and with some current receipts from business the plaintiff desired to open an account in the defendant bank but desired to be satisfied that it was safe so that the before mentioned outstanding checks would be paid through substitution of checks upon the defendant bank and were advised by the bank's vice-president, "we could place the money aside for you in a way that nobody or no one of the banks could touch, only to pay your accounts."

There is also testimony that the plaintiff desired a check book with her business name printed upon the checks for which the bank required a payment of two dollars and fifty ($2.50) cents against which plaintiff remonstrated, stating that she had done business with other banks for years and

always had such books furnished her without cost, to which the vice-president of the defendant replied, "Mrs. Maurello, that is only the cost of the book and the printing. * * * We are not investing that money. That money is kept aside for you."

From the cross-examination of the plaintiff the quite inescapable conclusion is that the proposed deposit was not exclusively for the purpose of meeting and paying checks to be issued against it for the payment of the outstanding unhonored checks against the Labor bank but also to meet checks in payment of current and subsequent business claims.

There is nothing in the proofs showing that the plaintiff or anybody for her disclosed or made known to the defendant bank at the time of opening the account or at any time the amount of the unpaid checks upon the Labor bank, the parties to whom they were drawn nor the respective amounts.

All of the proofs before referred to related to a conversation between the plaintiff and her husband and the vice-president of the bank held on March 20th, 1933, when an account was opened with an initial deposit of one hundred and fifty ($150) dollars in cash. Coincident therewith a signature card was prepared and signed by the plaintiff and a passbook issued and delivered to her. There is not the slightest suggestion or indication in any of these that the account so opened was other than an ordinary checking or demand account. Later, on the day of opening the account, there were two other deposits made thereto; one of $440.34 in cash and checks and the other of $13.71 in cash and a check. On the succeeding day, March 21st, there was a further deposit of $40.03 of cash and a check. All of the deposit slips are in form and character to those used in demand or general checking accounts and there is no suggestion thereon of the deposits being made to a special or trust account.

On March 23d, 1933, by order of the commissioner of banking and insurance, the usual, regular and full operation of the defendant bank was suspended and it was put upon a limited operation under the Altman act. *Pamph. L.* 1933, *chs.* 27, 66, *pp.* 27, 125.

From the opening of plaintiff's account on March 20th, 1933, to March 23d, 1933, the total deposits were $644.08 and the withdrawals $160.91 (included in which is the item of $2.50 for the check book) leaving a balance of $483.17.

Thereafter demand was made by the plaintiff upon the defendant bank for repayment to her of this balance and upon refusal, based upon the aforesaid order of the commissioner of banking and insurance she brought suit against the bank.

The complaint is in two counts which are much alike in that both allege that the moneys deposited were trust funds or a special account.

The first count recites the fact that the plaintiff had outstanding unpaid checks on the closed Labor bank, and, it may be inferred, that the account in question was opened as a trust account, dedicated to the payment of checks drawn thereon in substitution for the unpaid checks upon the Labor bank remaining unpaid.

Count two makes no reference to the outstanding Labor bank checks but alleges that the deposit in the defendant bank was a trust fund and was made "upon the express understanding and agreement that said moneys would, at all times, remain and be the sole and absolute property of plaintiff, and subject to her order, and would be held in trust for her and separate and apart from any other moneys then or thereafter received by the defendant."

The defendant answered, denying all of the material allegations of the complaint and pleaded as separate defenses lack of jurisdiction in a court of law because a trust was alleged; that the complaint disclosed no cause of action and that the alleged agreement was *ultra vires* and null and void.

At the close of plaintiff's case defendant moved a nonsuit upon two grounds:

1. That there was not sufficient evidence to constitute a valid cause of action; and

2. That the evidence was at variance with the complaint.

This was denied with exception allowed to the defendant.

At the conclusion of defendant's case a motion for the direction of verdict in favor of the defendant was made.

Five grounds were advanced and urged:

"1. That the plaintiff has failed to prove a state of facts sufficient to make out a case of actionable liability on the part of the defendant.

"2. Under and by virtue of the statutes in this case made and provided, chapter 66 of the laws of 1933 (the Altman act), plaintiff is not legally entitled to a judgment against the defendant bank.

"3. That the plaintiff is not entitled to a judgment at this time for the reasons set forth in ground 2.

"4. That by virtue of chapter 66 (*Pamph. L.* 1933), the defendant is legally prohibited from paying the plaintiff the moneys demanded by her or any part thereof at this time. There is a legal excuse for non-payment and therefore the action does not lie and judgment cannot be had.

"5. From the facts adduced the plaintiff became merely a general depositor with respect to all the deposits made by her, and the defendant is, therefore, entitled to a verdict because one in favor of the plaintiff would amount to the granting of an unlawful preference against those who have since deposited funds in trust pursuant to the Altman act."

This motion was granted upon the grounds, as expressed in the language of the trial judge:

"I feel that under the law which I must follow there is not a factual question for you [the jury] to decide that this alleged trust account was not such a trust account as the law considers a trust account. Secondly, that the commissioner of banking and insurance under a law passed by the legislature of the State of New Jersey * * * closed this bank for the protection of all depositors."

From the judgment entered upon such directed verdict the plaintiff below appeals and assigns ten grounds for reversal.

The first five of these are directed to alleged errors in admitting in evidence *Exhibits D-7, 8, 9, 10* and *11*.

As to these we find no error.

Grounds 6 and 7 are devoted to error said to have been created in permitting an answer to a question by the witness Gregg and the refusal of the trial court to strike out such answer.

Again we find no error.

Grounds 8 and 9 are directed to error said to exist in the trial court refusing to permit the witness Hoffmeyer to answer certain questions upon cross-examination.

Still we find no error.

Ground 10 is "because the trial court erred in directing a verdict in favor of the defendant against the plaintiff.

This appellant argues from two directions: First, "from the proofs in the case a factual question requiring submission to the jury arose as to whether the account was an ordinary banking account or a trust or special deposit." Second, that the trial court erred in construing the Altman act, *supra,* as prohibiting the bringing and maintaining an action against a bank operating thereunder.

The first of these calls immediately for a determination as to whether the proofs produced by the plaintiffs, if believed, established a special or trust account.

We think not.

The questions presented are:

What is a general account? What is a special or trust account? What is the relationship between the bank and the depositor in each case?

"A general deposit, which is the ordinary form, is the payment of money into the bank to be repaid on demand, in whole or in part, as called for in any current money. Such a deposit always consists of money which is mingled with other money, the entire amount forming a single fund from which depositors are paid; and where a general deposit is made, the title to the moneys passes from the depositor to the bank and the bank becomes the debtor to the depositor in a like amount. Such deposits possess no trust quality and in case of failure of the bank the depositor has no right to any preference but shares *pro rata* with the general creditors." 7 *C. J.* 628, § 305, &c., and citations thereunder.

"A general deposit is a deposit generally to the credit of the depositor to be drawn upon by him in the usual course of the banking business; a special deposit is a deposit for safe keeping to be returned intact upon demand, or *for some*

*specific purpose* not contemplating a credit on general account. *A deposit in a bank is presumed to be general in the absence of an agreement to the contrary."* 3 R. C. L. 517, § 146, and cases cited.

"A special deposit is a delivery of property, securities or even money to the bank for the purpose of having the same safely kept and the identical thing deposited returned to the depositor. The acceptance of a special deposit imposes no duty on the banker, except to keep the deposited article in safety and the deposit has no effect whatever on the title to the money or thing deposited, but the title remains in the depositor who is a bailor and *not a creditor* of the bank. * * * Whether a particular deposit is general or special is a matter to be determined by the facts and circumstances attending the making of the deposit, and the rule is that a deposit is not special unless made so by the depositor or unless made in particular capacity. Special deposits which are marked in some unusual manner and can readily be identified are not general deposits and are held by the bank as a trust for the depositor. A deposit may be for a specific purpose as where money or property is delivered to the bank for some particular designated purpose, as a note for collection, money to pay a particular note or draft, &c. While such a deposit is sometimes termed a 'special deposit' and partakes of the nature of a special deposit to the extent that the *title remains in the depositor and does not pass to the bank* yet it seems more accurate to look on this as a distinct class of deposit. In using deposits made for the purpose of having them applied to a particular purpose the bank acts as the agent of the depositor, and, if it should fail to apply it all, or should misapply it, it can be recovered as a trust deposit * * * ." 7 C. J. 630, &c., §§ 306, 307. Cf. 3 R. C. L. 517, § 146, *p*. 519, § 148 and *p*. 522, § 150.

From this it must be gathered that a deposit in a bank is general, creating the relationship of debtor and creditor as between the bank and the depositor, the debt to be satisfied upon payment on demand by the depositor.

On the other hand a special or a trust deposit is where

money or property is deposited to be kept intact and not commingled with other funds or property of the bank and to be returned in kind to the depositor or is devoted and dedicated to a particular purpose or requirement of the depositor or the payment of particular debts or obligations of the depositor; that is, earmarked or dedicated to some particular purpose. Where this appears the relationship between the depositor and the bank is that of bailor and bailee. The right of the depositor is to have the fund or property expended or used for the purposes to which he particularly dedicated them and, consummation thereof failing in whole or part, is entitled to a return of the fund or property either in whole or part. as the case may be.

A close and careful analysis of the proofs will disclose that they fail to show any agreement with the defendant bank by the plaintiff that the funds deposited should be devoted by the latter to any particular purpose or purposes.

It may be said, perhaps, that the purpose of the plaintiff was to deposit a fund specially dedicated to the payment of her outstanding unpaid checks upon the Labor bank. But this is not maintained by the evidence because as before stated there is not a scintilla of proof as to who these creditors were or the amount of their respective claims and, in fact, such a contention is completely negatived by the plaintiff's proofs which uncontrovertedly are that she was not seeking payment of these accounts alone but security for her deposits and the prompt payment of all checks to all persons to the extent of her balance at the time of the presentment of such drafts.

As before stated, we find that under the proofs of the plaintiff, taken at their full face value, the account was not a special or trust account but a general and demand or checking account.

The learned trial judge was, therefore, not in error in holding that there was no factual question to be submitted to the jury.

As to the second point urged under this ground we conclude that it is without merit.

The precise point made is that "the court misconstrued

the Altman act (*Pamph. L.* 1933, *ch.* 27, as amended by *Pamph. L.* 1933, *ch.* 66), as prohibiting the bringing of any law action against a bank operating under the act to recover moneys deposited in the bank," and the argument thereon is, in essence, that although the act gives to the commissioner of banking and insurance the power to postpone the payment of demand or time accounts, it does not stay law suits to recover such accounts and that there is no intimation in the statute that the legislature intended to prohibit the bringing of a law suit against the bank. We think that the prohibition against the payment of demand and time deposits carries as a necessary corollary the intention to prohibit suits for the recovery of such deposits.

The judgment under review is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ.   12.

*For reversal*—THE CHIEF JUSTICE, PERSKIE, JJ.   2.