(No. 22531.)

THE PEOPLE *ex rel.* Pearl Billings Brown, Exrx., Petitioner, *vs.* JOHN H. STELLE, State Treasurer, *et al.* Respondents.

*Opinion filed June 18, 1935.*

HERRICK, J., dissenting.

ARTHUR B. SCHAFFNER, and ALBERT G. DUNCAN, for petitioner.

OTTO KERNER, Attorney General, (STANLEY WATSON, of counsel,) for respondents.

Mr. JUSTICE FARTHING delivered the opinion of the court:

By leave granted, an original *mandamus* petition was filed here in which the petitioner, Pearl Billings Brown, executrix of the last will and testament of Frank A. Brown, deceased, seeks to compel the State Treasurer and Auditor of Public Accounts to re-pay $2940.26, with interest thereon at three per cent from July 13, 1933. She claims this amount was over-paid as inheritance tax on the testator's estate and that it is unjustly withheld.

Frank A. Brown died testate August 14, 1929, a resident of Cook county. The petitioner was appointed executrix August 21, 1929. Brown's will created a trust in favor of his three children. The trust was to terminate when the youngest child became twenty-five years old. At that time the property so held was to be divided among the surviving children, the child or children of a deceased child taking in his stead. The youngest of the three children became twenty-five July 1, 1932, and all three were then living. Because of the contingency the inheritance tax was assessed on the theory that the entire corpus of the trust would pass to one grandchild, in accordance with the rule laid down in *People* v. *Byrd,* 253 Ill. 223, and section 25 of the Inheritance Tax act.

The county treasurer of Cook county received $43,588.47 from the petitioner on April 14, 1930, the last day of the eight months' period immediately following the testator's death. This sum exceeded the inheritance tax due the State. She received the following receipt:

"$43,588-47/100. CHICAGO, *April 14, 1930.*

"Received of estate of Frank A. Brown forty-three thousand five hundred eighty-eight ,and 47/100 dollars as a deposit to apply in payment of inheritance tax to be subsequently fixed by county judge. GEORGE F. HARDING, *County Treasurer."*

The county judge entered an order September 25, 1930, assessing the total inheritance tax against the estate in the amount of $38,466.45. September 25, 1930, the county treasurer re-paid the petitioner $7045.34, which was made up of the difference between the amount he had received and the amount assessed, less a discount of five per cent. On that day the county treasurer issued a receipt for $36,543.13, acknowledging payment in full of the inheritance tax.

Shortly after July 1, 1932, when the youngest of the three children of Brown became twenty-five years old, the petitioner filed a petition for a re-assessment of the tax in

the county court in accordance with the statute. On February 17, 1933, that court ordered the tax re-assessed at $24,299.14. On February 28, 1933, the petitioner presented her claim to the State Treasurer for a refund of $13,458.95, with interest at three per cent per annum from April 14, 1930. The claim was allowed only to the extent of $10,620.01, with three per cent interest thereon from September 25, 1930. The State Treasurer added to the amount of the re-assessed tax ($24,299.14) $1623.98, which represented interest at six per cent per annum on $24,299.14 from the date of Brown's death, August 14, 1929, to September 25, 1930, the date of the original assessment of the inheritance tax, and deducted this total from the tax of $36,543.13 paid. The petitioner received a warrant July 13, 1933, for $11,829.81 in payment of her claim, with interest. The petitioner says that on July 13, 1933, there was due her, instead, the sum of $14,770.07, or a difference of $2940.29, which she claims is due her, with interest at three per cent per annum from July 13, 1933. She claims a right to a discount of five per cent on $24,299.14. This leaves a balance of $23,084.18. This deducted from the amount actually paid, $36,543.13, produces $13,458.95, which she claims is due, and which, with interest at three per cent per annum from April 14, 1930, to July 13, 1933, totals $14,770.07. The respondents filed a motion to dismiss. By leave the motion stood as an answer, and to that answer the petitioner demurred.

The respondents say the county treasurer had no authority to accept anything by way of deposit out of which the inheritance tax was to be later paid, since the Inheritance Tax act made no such provision when the money was paid by the petitioner to the county treasurer, and that since it was unauthorized by the act, his acceptance of the money from the petitioner and the giving of the receipt therefor quoted above did not affect the rights of the State

as against the petitioner. In *People* v. *Baldwin,* 287 Ill. 87, the county court had by its order, and without statutory authority, attempted to remit interest for certain years on inheritance tax due on the transfer of certain real estate under the will of the testatrix, Mary E. Gardner Baldwin. We held that such order, in so far as it purported to remit interest, was void. The respondents here rely upon that holding to support their contention that the facts here justify a charge of interest at six per cent per annum from the date of death of Brown to the 25th of September, 1930, the date the original assessment of inheritance tax was made, and also the date the county treasurer refunded the over-payment to the petitioner in accordance with the order fixing the tax at the highest possible rate because of the contingency above set out. In the *Baldwin case* we held that the interest provided for is not in the nature of a penalty but is compensation fixed by the legislature for the State's loss of use of the money represented by the tax. There was no payment of tax in that case within the period wherein a discount was allowed, which was then six months and which was later changed to eight months.

The *Baldwin case, supra,* is only applicable in so far as it supports the general rule that statutory authority must be found for the acts of taxing bodies and collectors. The third section of the Inheritance Tax act makes inheritance taxes due and payable upon the death of the decedent. Section 6 makes the county treasurer the receiving officer to whom the tax shall be paid, and section 20 requires him to remit to the State Treasurer on the first day of each month the inheritance tax collected before that date. This section provides a penalty of one-tenth of one per cent per day on all inheritance tax so collected and unremitted by the county treasurer. Section 11 makes it the duty of the county judge to appraise estates and to assess inheritance taxes. It makes it the duty of the Attorney General to exercise general supervision over the assessment and col-

lection of such taxes, and it is made the duty of the several State's attorneys to render him such assistance as he may require. Any interested party is permitted by this section to make application for an appraisal and the assessment of the tax, but there is no provision in the act making it his duty to make such application. By the amendment of 1929 section 3 not only provided, at the time here in question, that interest should be charged at six per cent per annum from the date the tax was due and payable, viz., the date of death of the decedent, but it also provided that if it were paid within eight months from that date a discount of five per cent of the tax should be allowed and no interest should be charged.

The respondents say that the money deposited with the county treasurer "to apply in payment of inheritance tax to be subsequently fixed by the county judge" did not constitute a payment of such tax, and that the county treasurer could not report the collection or transmit such money to the State Treasurer. This is urged in spite of the fact that section 10 provides for a refund from the State Treasurer to the county treasurer in case of over-payment by the latter to the former, if proof is furnished within two years, etc., and in spite, also, of the penalty provided for failure to remit, contained in section 20.

The question whether the county treasurer had authority to receive a deposit, issue his personal receipt therefor, to agree to hold the money until the tax was assessed by the county judge and not to account for the money or transmit it to the State Treasurer until such assessment was made, is not before us. We held that the purpose of the discount was to encourage payment of inheritance taxes in the *Baldwin case, supra.* The parties here acted in good faith. The petitioner sought to pay the tax within the eight months' period and to take advantage of the discount which the statute offered her. The receipt does not bind the county treasurer not to account for or to remit but to

hold the money until a future day. "Deposit to apply in payment" means payment, and the county treasurer had no authority to return this money to the petitioner. It became his duty to transmit the money to the State Treasurer at the next accounting day, the first of the following month. His failure to remit does not militate against the rights of the petitioner. He had the money which he had received within the period allowed by law, and within which, if paid, a discount was to be allowed on the tax. He, and not the petitioner, prevented the State from having the use of its money by his failure to account and pay to the State Treasurer. There is no question here involving the scope of the authority of the county treasurer. The petitioner intended to, and did, pay the tax, and that payment was to the officer designated by statute to receive payment. It is no answer that the receipt contains the word "deposit" and provides that out of the deposit payment is to be made. What the petitioner did was to pay, in fact, more than the unascertained tax amounted to. Although the county treasurer later refunded to her the overplus without provision for this in the statute, this does not operate to deprive her of the right to the discount of five per cent and does not make her chargeable with six per cent per annum on the correct amount of tax when that amount was later determined. The money was in the hands of the representative of the State who was authorized to receive it. It was the duty of the Attorney General and the county judge to proceed to assess the tax, which became due and payable the moment Brown died. The petitioner was permitted by statute to file an application or petition for the assessment of the tax, but this was not her duty. That duty was one within the province of the Attorney General.

The petitioner was entitled to receive the discount of five per cent on the amount finally determined to be due as inheritance tax on the happening of the contingency men-

tioned in the testator's will, and she is entitled to a refund of the excess, with interest at three per cent per annum. The writ of *mandamus* will therefore be awarded as prayed.

*Writ awarded.*

Mr. JUSTICE HERRICK, dissenting:

The decision here turns upon whether the delivery of the sum to the county treasurer on April 14, 1930, was a payment of the tax on that day.

Prior to the amendment added by the act of 1933 to section 3 of the act relating to a tax on devises, inheritances and gifts, no statutory provision was made for the deposit of a sum to be applied towards the payment of the transfer tax in advance of its actual determination. (Cahill's Stat. 1931, chap. 120, par. 398, p. 2389; Smith's Stat. 1931, chap. 120, par. 377, p. 2454.) Provision is now made by such amendment for such deposit with the county treasurer before the ascertainment of the tax and for the immediate payment thereof by him to the State. Cahill's Stat. 1933, p. 2383; Smith's Stat. 1933, pp. 2437, 2438.

In construing a statute the legislative intent should be ascertained from the whole act as well as from the different parts thereof. Section 20 of the act (Cahill's Stat. 1931, p. 2393; Smith's Stat. 1931, p. 2457;) provided that the county treasurer should on the first day of each month transmit to the State Treasurer all such taxes so collected prior thereto and not theretofore remitted. The proceedings for the determination and collection of a transfer tax are regulated and controlled by the statute. There is no power in any official to grant any discount from the amount of the tax or waive any interest thereon unless such power is conferred by the statute. (*People* v. *Baldwin,* 287 Ill. 87.) It was manifestly the legislative intent to encourage the early payment of the tax so that the funds should be speedily available to the State for use by it in liquidating State governmental expenses. For that reason the discount of five per cent was permitted if the tax was paid within eight

months subsequent to the decedent's death, and for the same reason the act provided for the payment of interest at six per cent by those estates not paying the tax within eight months from the date of death. The payment contemplated by the statute was not a conditional payment but an unqualified payment, by which the title to the money paid in liquidation of the transfer tax was instantly passed to the State for its unrestricted use, conformable to the provisions of the statute.

In order that an heir or· devisee might secure· the benefit of the statutory discount and not be charged with interest on account of the failure of any executor, administrator or representative of the State promptly to institute proceedings for the determination of the tax, section 11 of the act provided that application for the assessment of the tax might be made by any interested person. While it is not the duty of such interested person to institute such proceedings under the statute, yet he has that privilege. Manifestly, one of the objects sought to be attained by this provision was, in the event of delay, that the rights of the heir, devisee or beneficiary might not be prejudiced but the discount obtainable and the interest saved by the prompt payment of the tax should be available to him if he was diligent even though the executor, administrator or State official charged with the collection of the tax was dilatory. The record does not disclose who instituted the proceeding to have the transfer tax fixed nor who was responsible for the delay in the adjudication of the amount of the tax due, but it is obvious that the proceeding was unduly delayed, either in the institution thereof or its prosecution to a final conclusion. The receipt issued by the county treasurer did not show a pre-payment of the tax. The receipt recites that the sum is received "as a deposit to apply in payment of inheritance tax to be subsequently fixed by county judge."

Clearly, under this instrument it was not contemplated that the fund, or any part thereof, should be paid over to

the State Treasurer, as provided by section 20, until the amount of the tax was subsequently fixed. Manifestly, it was intended that the county treasurer should hold the fund not as a payment of the tax but as a "deposit," as so unequivocally recited in the receipt, from which "deposit" the tax was ultimately to be paid when subsequently fixed, and the remainder, if any, returned to the tax-payer. The statute made no provision for a "deposit," and if there was a defect in the statute the remedy was in the legislature and not by judicial interpretation. The amendatory act of 1933, by which provision is made for the payment of the amount of the anticipated tax in advance of its ascertainment, manifestly discloses that prior to the passage of such amendatory act the legislative intent was not to authorize the receipt by the county treasurer of the tax prior to the determination thereof, with the attendant benefits to those liable for the tax.

It is admitted by the pleadings that no part of the fund was paid over to the State Treasurer until after the tax was assessed by the order of September 25, 1930. The obvious design in the delivery of the money here to the county treasurer on April 14, 1930, was, that such fund should be retained by him until the amount of the tax was at some future time adjudicated and the money then applied toward the discharge of the tax. Under the method followed by the tax-payer here, she expected to receive the benefit of the discount authorized by the statute by punctual payment within the statutory period of grace allowed, and she likewise expected to avoid liability for interest by making the so-called deposit with the county treasurer. The State by such plan secured no immediate use of the funds by virtue of the so-called deposit, but as a practical result lost the statutory discount as well as the interest which would otherwise have accrued for failure to pay the tax within the statutory eight months' period. There was no provision of the statute then in force which would enable

a tax-payer to obtain the benefit of the statutory discount, as well as the avoidance of the requirement for the payment of interest, by making a deposit or payment of a transfer tax to the county treasurer in advance of the order of the judge determining the tax. While such provision might have been desirable, the defect, if any existed, was in the legislative act, and we cannot by judicial decision read into the statute a provision not authorized directly or by implication by the statute itself. The method pursued here was clearly a device by which, without statutory authority, the money was placed with the county treasurer as a deposit and not as a payment, for the purpose of giving to the tax-payer the benefit of the statutory discount and also avoiding the liability for interest for failure to pay within the period fixed by the statute.

The demurrer to the answer to the petition for writ of *mandamus* should be overruled, the writ denied and the petition dismissed.