(No. 33662.—)

THE PEOPLE *ex rel.* Housing Authority of the City of East St. Louis, Appellee, *vs.* CLINTON HURSEY *et al.,* Appellants.

*Opinion filed January 19, 1956.*

PAUL B. WALLER, JR., of East St. Louis, for appellants.

RICHARD T. CARTER, State's Attorney, of Belleville, and CHARLES M. WHEALON, of East St. Louis, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

St. Clair County Housing Authority, a municipal corporation, and certain of its commissioners, defendants below, appeal directly to this court from a judgment of the circuit court of St. Clair County directing a writ of *mandamus* to issue requiring the defendants to convey title to certain housing projects, to transfer all monies and personal property held for use in the construction, maintenance and operation thereof, and to assign all contracts and obligations relating thereto, to the Housing Authority of the City of East St. Louis.

The suit was instituted on behalf of the Housing Authority of the City of East St. Louis to require such action under the authority of a 1953 amendment to the Housing Authorities Act. (Ill. Rev. Stat. 1953, chap. 67½, pars. 3 and 17(b)(2).) Defendants filed a demand for jury trial in apt time. Defendants' motion to dismiss the suit on the ground that such amendment was unconstitutional as impairing the obligation of contracts in violation of both the State and Federal constitutions was denied. De-

fendants thereupon filed an answer admitting certain paragraphs of the complaint, neither admitting or denying others, denying on information and belief certain others, and then alleged seven purported affirmative defenses, including the defense of unconstitutionality. The answer was verified by the affidavit of the chairman of the St. Clair County Housing Authority that he had read the answer and that the same was true to the best of his knowledge, information and belief. The judgment appealed from was thereafter entered on plaintiff's motion for judgment on the pleadings. The validity of a State statute was specifically challenged and the appeal comes directly to this court.

In view of the provisions of the Civil Practice Act requiring specific denials of allegations of fact, (Ill. Rev. Stat. 1953, chap. 110, par. 164(2),) those allegations in the complaint which were neither admitted nor denied by the answer must be considered as admitted.

The uncontradicted facts as disclosed by the pleadings, so far as pertinent to this appeal, disclose that the St. Clair County Housing Authority, hereafter referred to as County Authority, is a municipal corporation organized and existing under Illinois law for more than ten years; that the individual defendants are commissioners thereof; that the Housing Authority of the City of East St. Louis, hereinafter called City Authority, is a municipal corporation organized under Illinois law on May 8, 1954; that on said date County Authority owned five certain tracts of real estate within the corporate limits of the city of East St. Louis on which five housing projects existed, the County Authority holding the same in trust for bondholders, note owners, and the Public Housing Administration under a recorded declaration of trust; that on said date County Authority had various monies and personal properties it used in the construction, maintenance and operation of such projects, but all of its monies were on deposit outside the territorial limits of East St. Louis; that said five

projects are the only projects owned by County Authority financed in whole by the Public Housing Administration and all are within the city of East St. Louis; that the County Authority and its officers failed, refused and neglected to meet with City Authority and its officers to discuss the transfer of its assets as required by law; that on August 5, 1954, County Authority received a registered letter from City Authority requesting immediate transfer of all County Authority assets within the city limits of East St. Louis; that City Authority requested the State Housing Board to take appropriate action under powers given it by the Housing Authorities Act (Ill. Rev. Stat. 1953, chap. 67½, par. 1 *et seq.*); that on September 17, 1954, the State Housing Board passed a resolution directing County Authority to comply with the law by transferring all its assets within East St. Louis to City Authority by November 1, 1954; that County Authority transferred to City Authority a reservation to construct certain dwelling units within the city but did not transfer all the assets requested; that on November 17, 1954, the State Housing Board by resolution ordered County Authority to transfer to City Authority all of the property and obligations within the city under its direction and control which were financed and constructed under direction of the Public Housing Authority; that prior to August 6, 1954, the Public Housing Administration requested County Authority to transfer all properties it owned which were financed in whole or in part by it and situated in the city limits of East St. Louis and directed it as to procedures to be followed by both County and City Authorities in effecting such transfer; that such directions required a bill of sale of personal property, quitclaim deed of real estate, transfer of funds arising from or in any way connected with the development or operation of the projects, novation agreement by each authority as to annual contribution contract with Public Housing Administration, and as to each con-

tracting party having uncompleted contracts with County Authority, publication of notice in Daily Bond Buyer in New York that City Authority was new obligor as to County Authority bonds, formal approval by City Authority of all action by County Authority respecting its issuance of all obligations, transfer by County Authority of all books, records, etc. and each authority to take such additional actions "to the end that the City Authority will succeed to all obligations, rights, title and interest of the County Authority in and to the Projects, to the same extent as though the City Authority was the original party to such obligations, rights, title and interest instead of the County Authority."

The only facts specifically denied in the answer of defendants pertinent to this appeal were that they failed, refused and neglected to comply with plaintiff's demand, that a formal demand was made on them by the City Authority, and that they refused to transfer their assets, alleging transfer of reservation to construct units as their compliance.

The affirmative defenses set up in the answer were (1) that the petition prays transfer of property without regard to its location; (2) that neither the State Housing Board or the Public Housing Administration had jurisdiction to order the transfer; (3) that the statute in question is unconstitutional since it would impair the obligation of contracts; (4) that no clear right to a writ of *mandamus* has been shown; (5) that City Authority is estopped from claiming the rights asserted because of certain agreements by the city of East St. Louis; and (6) that the statute would compel defendants to do what it has expressly contracted not to do.

The statutory provisions in issue are as follows:

"* * * If thereafter an Authority is organized with respect to any city, village, or incorporated town within the county, the county Authority shall have no power to

initiate any further project within such city, village, or incorporated town and the Authority so created shall take over all property and obligations within such city, village or incorporated town of the county Authority previously including it or them within its area of operation and such county Authority shall have no further jurisdiction over property within the territory of such city, village or incorporated town. * * *" Ill. Rev. Stat. 1953, chap. 67½, par. 3.

"* * * When an authority is created for a city, village or incorporated town subsequent to the creation of a county housing authority which previously included such city, village or incorporated town within its area of operation, such county housing authority shall turn over all its property and obligations within such city, village or incorporated town to the authority for such city, village or incorporated town as required by Section 3." Ill. Rev. Stat. 1953, chap. 67½, par. 17(b)(2).

The defendants rely upon four errors as a basis for reversal. They are:

1. The statutory provisions impair the obligation of contracts and are unconstitutional;

2. The defendants cannot be required to transfer property located outside the city limits under the statute;

3. No clear right to the writ of *mandamus* was shown; and

4. Questions of fact should have been submitted to a trial by jury.

The legislative purpose of creating housing authorities, as expressed in section 2 of the Housing Authorities Act (Ill. Rev. Stat. 1953, chap. 67½, par. 2,) is to promote and protect the health, safety, morals and welfare of the public. Section 8 of the same act specifically provides that a housing authority shall constitute a body both corporate and politic, exercising public powers. Such authorities were created by the legislature to exercise public and essentially

local government functions. (*Krause* v. *Peoria Housing Authority*, 370 Ill. 356; *Housing Authority of Gallatin County* v. *Church of God*, 401 Ill. 100.) As such the legislature may control and dispose of their property as shall appear to be best for the public, (*People ex rel. Gutknecht* v. *City of Chicago*, 414 Ill. 600; *People ex rel. Ammann* v. *Wabash Railroad Co.* 391 Ill. 200; *City of Geneseo* v. *Illinois Northern Utilities Co.* 363 Ill. 89,) so long as such disposition does not violate the constitutional mandate against impairment of contract.

Sections 8 and 9 of the Housing Authorities Act empower housing authorities, among other things, to acquire property, make contracts, and borrow money. However, section 11 of the same act provides that no indebtedness of any nature of an authority shall constitute an obligation of the State, of any municipality or county, or of any other instrumentality thereof, but shall be payable only out of the properties, revenues, and assets of the authority. The same section further provides that rights of creditors of an authority shall be against such authority as a corporate body and shall be satisfied out of property held by it in its corporate capacity, and the enforcement of such rights shall be subject to all the provisions of this act.

Since the legislature had the right to provide for the control and disposition of County Authority's property as it deemed for the best interests of the public, as above indicated, the principal question is whether such action impaired the validity, security or effectiveness of any contractor's rights and securities. Under section 11 of the act all creditors' rights are limited to the authority's property, revenue and assets, and they have no claim payable from any other source. Since the act requires the successor City Authority to take over not only all County Authority property within its territorial limits but also all County Authority obligations, we fail to see any possible impairment of a creditor's contract rights. The legislative intent

is clear that upon the organization of a City Authority it should take over jurisdiction and responsibility of all housing projects within its territorial limits and all property incidental to its construction, maintenance and operation, and at the same time assume all liabilities in respect thereto. Under such circumstances, any person with contract rights against the County Authority would have the same rights against the successor City Authority, with the same remedial rights and the same property interests and credit supporting the contract.

The argument of County Authority that the statute does not extend to requiring a transfer of funds pertaining to projects in the city because they happen to be on deposit outside of the city is fallacious. A bank deposit merely constitutes a chose in action, or right to money. It is a debt owing by the depository, collectible by the person to whom owed. It was clearly the statutory intent that funds hypothecated or attributable to, or arising from, any project or property within the city, and constituting a debt due the same, should pass to the city authority with the property. A thing within the intention of the statute is regarded as within the statute though not within the letter. *People ex rel. Krause* v. *Harrison,* 191 Ill. 257.

The unsoundness of defendant's position is further indicated by its outright and unjustifiable refusal to comply with the State Housing Board and the Public Housing Administration directives and orders, within their proper jurisdiction. Section 13 of the Housing Authorities Act (Ill. Rev. Stat. 1953, chap. 67½, par. 13,) and section 27 of the State Housing Act (Ill. Rev. Stat. 1953, chap. 32, par. 530,) vest the State Housing Board with authority to order every housing corporation to do such acts as may be necessary to comply with the provisions of law except to the extent a Federally financed project is supervised or controlled by the Federal government. The directive from the Public Housing Administration to County Authority

was within its jurisdiction and clearly and in detail spells out the procedure by which all property is to be turned over to City Authority and City Authority placed in County Authority's shoes without impairing any contract rights of any person whomsoever.

Since the duties sought to be enforced in this proceeding were strictly of a public nature pertaining to the statutory obligations of public corporations owed the State and its people, prior demand was not necessary to institution of *mandamus* proceedings. (*Murphy* v. *City of Park Ridge*, 298 Ill. 66; *People ex rel. Busch* v. *Green*, 281 Ill. 52.) All of the material allegations of fact admitted by the pleadings established a clear right to the writ of *mandamus*, and there were no disputed questions of fact affecting the right to *mandamus* for trial by jury.

The statute in question does not impair the validity of any contract under the facts in this case and the defendant presented no justification for a refusal to comply with the Illinois law and the lawful directives and requests made. Thus the trial court had before it a clear case warranting issuance of a writ of *mandamus*. The judgment is affirmed.

*Judgment affirmed.*