161 N.J. Super. 592 (1978)
392 A.2d 178
MYRON W. KRONISCH ET AL., PLAINTIFFS-APPELLANTS,
v.
THE HOWARD SAVINGS INSTITUTION, ETC., DEFENDANT-RESPONDENT AND CROSS-APPELLANT, AND HAROLD CHAMBERS ET AL., PLAINTIFFS-APPELLANTS,
v.
BERKELEY SAVINGS AND LOAN ASSOCIATION, ETC., DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 1976.
Remanded July 19, 1976.
Reargued June 7, 1978.
Decided August 4, 1978.
*594 Before Judges LYNCH, LARNER and HORN.
Mr. Cyrus J. Bloom argued the cause for plaintiffs-appellants (Mr. Bloom and Ms. Barbara J. Williams on the brief).
Mr. William H. Hyatt, Jr. argued the cause for defendant-respondent and cross-appellant The Howard Savings Institution (Messrs. Pitney, Hardin & Kipp, attorneys).
Mr. Arthur D. Grossman appeared for defendant-respondent and cross-appellant Berkeley Federal Savings (Messrs. Fox & Fox, attorneys).
PER CURIAM.
Originally certified as a class action by the trial judge, 133 N.J. Super. 124 (Ch. Div. 1975), this matter was remanded by the Appellate Division to be tried as a "test case," reserving for future consideration whether it *595 should be certified as a class action. 143 N.J. Super. 423 (App. Div. 1976). Pursuant to that remand the Chancery Division entered judgment adverse to plaintiffs on the merits of the cause of action. 154 N.J. Super. 576 (Ch. Div. 1977). Plaintiffs now appeal.
The facts are detailed in the cited decisions and need not be repeated here. Suffice it to say that plaintiffs, mortgagors under G.I. and F.H.A. mortgages, appeal from a decision holding that, although the mortgage instruments provide that advance, estimated tax payments paid to defendant mortgagees (hereafter sometimes called "the banks") are to be held "in trust" for payment of taxes, the parties did not intend to create a trust thereby but only to impose upon the mortgagees a contractual duty to apply the payments to taxes. Thus, defendant mortgagees were not held accountable by the trial court for any money earned through investment of said funds.
Defendant mortgagees cross-appeal from the trial judge's decision to enjoin them from using the "in trust" language in such mortgages in the future and reserving the issue of counsel fees and awarding costs.

I

Nature of the relationship: trust or debt

Plaintiffs contend that a trust was created because of the "in trust" language of the mortgage instruments and, further, on the theory that the tax payments were "deposits for a special purpose." We conclude that such contentions are erroneously based on a too literal reading of the "in trust" language, isolating it from the remaining provisions of the instruments, and fail to consider established principles of trust law as recognized by leading authorities in the field and as applied, in virtual unanimity, by the decisional law of this and other states.
Whether a trust or a debt is created when one party pays money to another depends primarily upon their intent, State *596 v. Atlantic City Electric Co., 23 N.J. 259, 266 (1957); State v. Western Union Telegraph Co., 17 N.J. 149, 152 (1954). It is well established that use of the phrase "in trust" in connection with a particular transaction does not dispose of the question of intention, and that even where such language is used a debtor-creditor relation may nonetheless arise. 1 Scott, Trusts (3 ed. 1967), § 24 at 194-195; Restatement 2d, Trusts, § 24, Comment (b) at 68 (1959); Brooks v. Valley National Bank, 113 Ariz. 169, 548 P.2d 1166, 1171 (Sup. Ct. 1976). Further, the mere fact that a bank or other entity has accepted funds for transmittal to a third party does not necessarily give rise to a trust relationship. Again, the question is one of intent. See State v. Western Union Telegraph Co., supra 17 N.J. at 152.
In determining whether the parties intended to create a trust or merely a debt, several factors must be considered. Thus, in Restatement 2d, Trusts, supra § 12, Comment (g) at 37, it is said:

g. Manifestation of intention. If one person pays money to another, it depends upon the manifested intention of the parties whether a trust or a debt is created. If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created.
The intention of the parties will be ascertained by a consideration of their words and conduct in the light of all the circumstances. Among the circumstances which may be of importance in determining the intention of the parties are: (1) the presence or absence of an agreement to pay interest on the money paid; (2) the amount of money paid; (3) the time which is to elapse before the payee is to be called upon to perform his agreement; (4) the relative financial situation of the parties; (5) the relations between the parties; (6) their respective callings; (7) the usage or custom in such or similar transactions.
In applying these principles in the case at bar it must first be recognized that plaintiffs and defendants, by reason of their mortgagor-mortgagee relationship, stand in a debtor-creditor *597 relation and that the advance tax payments were required solely as further security for the mortgage debt. Thus, the payments were intended to benefits the banks, not plaintiffs. In State v. Atlantic City Electric Co., supra. the Supreme Court, in determining whether utility deposits were held by defendant as a trustee, considered this factor as significant in finding that no trust relation existed: "The individual consumer was not to retain any beneficial interest in the money deposited, the security arrangement obviously being solely for the benefit of the company." 23 N.J. at 269; Petherbridge v. Altadena Federal S. & L. Ass'n, 79 Cal. App.3d 509, 145 Cal. Rptr. 87, 96 (D. Ct. App. 1978).
Second, the terms of the mortgage instruments themselves indicate that the parties considered the tax payments as part of the "debt" created by the loan and mortgage. The instruments state flatly that failure to pay the estimated taxes in advance shall constitute a deficiency and default, and that upon such default defendants may opt to declare the entire indebtedness immediately due and payable. Thus, it is clear that the tax payments were in no way different from the payments on account of the principal and interest due under the mortgage, the only exception being that defendants thereby became obligated to satisfy the taxes. As such, the transaction partakes more of a debtor-creditor relation than of a trust relation. This is also evidenced by the fact that excess payments for taxes, insurance, ground rents and special assessments "shall be credited on subsequent payments"  not held in a separate account for future charges.
Third, the mortgage instruments make no provision for segregating tax payments in a separate account. In fact, as indicated above, the instruments affirmatively indicate that such payments would not be segregated. The fact that there is no provision for segregating the payments and that the payments were, indeed, not segregated provides strong evidence that no trust was intended. See State v. Atlantic City Electric Co., supra 23 N.J. at 268-269; State v. Western Union Telegraph Co., supra 17 N.J. at 152-153.
*598 Further, plaintiffs assert that a trust relationship is indicated by the fact that defendants were not required to pay interest on the tax payments. True, such a circumstance is ordinarily probative of the existence of a trust. State v. Atlantic City Electric Co., supra 23 N.J. at 266. However, payment of interest is but one factor which the courts may assess and is not determinative in itself. McGlynn v. Schultz, 90 N.J. Super. 505, 517 (Ch. Div. 1966), aff'd 95 N.J. Super. 412 (App. Div. 1967). As said in 1 Scott, op. cit., § 12.2 at 112:
No agreement to pay interest. Where there is no agreement for the payment of interest, other circumstances must be resorted to in order to determine whether a trust or a debt is created. The question in each case is whether it was intended that the person receiving the money should hold it for the benefit of another, or whether it was intended that he might use it as his own, being under a merely personal liability to pay a similar amount of money. In the latter case a debt and not a trust is created. In most cases, of course, the language of the parties or the character of the transaction makes it clear which relation was contemplated.
Here, as noted earlier, the "language of the parties" looking at the documents as a whole and the "character of the transaction" are strongly indicative of a debtor-creditor relation.
Also, the conduct of the parties belies any intention to create a trust. Not only have defendants commingled the tax payments with their general funds ever since the mortgage payments first became due, but plaintiffs themselves never suggested or indicated in any way that defendants could not do so. Further, it is simply contrary to common sense that plaintiffs and defendants intended to create a trust, requiring defendants to establish a separate account for the tax funds and precluding them from merely mingling such sums in their general funds. As Professor Bogert notes:
In deciding these questions account should be taken of the practices of banks in incurring and satisfying all their obligations. They customarily intend to, and do, meet obligations out of any assets which are convenient at the time, and are loathe to commit themselves *599 to satisfying claims out of particular, earmarked assets. This practice facilitates speed and ease of administration. Ear-marking and setting aside cash or credit involve delay and additional expense. Clear proof should be required to prove that such an institution undertook a trust in its banking or commercial department operations, rather than merely incurred a contract obligation. [Bogert, Trusts and Trustees (2 ed. 1965) § 21 at 158]
Apart from these observations, the great majority of other jurisdictions that have considered similar claims have found that there is no trust relationship and that the parties are merely in a debtor-creditor relationship. Brooks v. Valley National Bank, supra, 548 P.2d 1166; Carpenter v. Suffolk Franklin Savings Bank, 346 N.E.2d 892 (Mass. Sup. Jud. Ct. 1976); Surrey Strathmore Corp. v. Dollar Savings Bank of New York, 36 N.Y. 2d 173, 366 N.Y.S.2d 107, 325 N.E.2d 527 (Ct. App. 1975); Richman v. Security S. & L. Ass'n, 57 Wis.2d 358, 204 N.W. 2d 511 (Sup. Ct. 1973); Tucker v. Pulaski Federal S. & L. Ass'n, 252 Ark. 849, 481 S.W.2d 725 (Sup. Ct. 1972); LaThrop v. Bell Federal S. & L. Ass'n, 42 Ill. App.3d 183, 355 N.E.2d 667 (App. Ct. 1976), aff'd 68 Ill.2d 375, 12 Ill. Dec. 565, 370 N.E.2d 188 (Sup. Ct. 1977); Durkee v. Franklin Savings Ass'n, 17 Ill. App.3d 978, 309 N.E.2d 118 (App. Ct. 1974); Zelickman v. Bell Federal S. & L. Ass'n, 13 Ill. App.3d 578, 301 N.E.2d 47 (App. Ct. 1973); see also, Manchester Gardens v. Great Western Life Assur. Co., 92 U.S. App. D.C. 320, 205 F.2d 872 (D.C. Cir.1953); Yudkin v. Avery Federal S. & L. Ass'n, 507 S.W.2d 689 (Ky. Sup. Ct. 1974); Tierney v. Whitestone S. & L. Ass'n, 83 Misc.2d 855, 373 N.Y.S.2d 724 (App. Term 1975).[1] While each of these cases differs factually in some degree from the case at bar, nonetheless the theme common to *600 each is that the mere fact that a bank requires a mortgagor to tender advance tax payments and the bank thereupon covenants to pay such taxes is not sufficient to establish a trust relation between the bank and mortgagor. Such is the circumstance herein.
In the recently decided case of Petherbridge v Altadena Federal S. & L. Ass'n, supra, 145 Cal. Rptr. 87, the Court of Appeals in California reached a result contrary to that sought by plaintiffs herein on analogous facts. The court, in concluding that the parties did not intend to create a trust requiring defendant bank to account for earnings acquired through the investment of "impound" payments under a mortgage, noted:
In view of the fact the dominant purpose of the impound payment arrangement was to enhance the security of the deed of trust and, thus, to benefit defendant, not plaintiff, it would not be reasonable to expect that defendant would undertake the onerous responsibilities of a trustee. The same conclusion is indicated by the relatively small sums involved and the relatively short time between defendant's receipt of impound moneys and its payment of taxes and insurance premiums. The written instruments are inconclusive, but the parties' conduct persuasively indicates they intended the legal consequences attendant upon a debtor-creditor relationship, not those of a trust. Plaintiff's actions do not manifest an intention to create a trust. Defendant's treatment of the impound payments was entirely inconsistent with the existence of a trust. In view of defendant's conduct, the only reasonable expectation it could have had is that in the event of the no-fault loss of these funds, it would remain obligated to pay taxes and insurance premiums and it, not plaintiff, would bear the loss. There is nothing in plaintiff's words or actions manifesting an expectation to the contrary. The expectation of that legal consequence is a sure indication the relationship intended was that of debt-or-creditor, not trustee-beneficiary. (See Rest. 2d Trusts, § 12, com. e and illus. 3 and 4, p. 36.) [145 Cal. Rptr. at 98]
Aside from ordinary trust principles, plaintiffs further contend that the tax payments constitute "deposits made for a special purpose," necessarily giving rise to a trust. Plaintiffs assert that the payments are "deposited" in the banks for the special purpose of satisfying taxes due on the mortgaged *601 property and that defendants therefore are "trustees" insofar as such payments are concerned.
In our view the tax payments herein are not "deposits" at all, either general or special. According to Webster's Third New International Dictionary (1961), a "deposit" may be defined as "money that is deposited in a bank or with a banker, that is subject to order * * *." See also, 10 Am. Jur.2d, Banks, §§ 337 and 338 (1963). Here, it is manifest that, unlike a traditional "deposit," the advance tax payments made by plaintiffs are not in any degree "subject to order." Rather, such payments are more reasonably classified as installments on a debt which the banks accept as a creditor, rather than as a depositary. Indeed, defendants herein do not act simply as "middlemen" for a third party.
In support of their contention that the tax payments were "special deposits" impressed with a trust, plaintiffs rely upon Deal v. Asbury Park & Ocean Grove Bank, 118 N.J. Eq. 297 (E. & A. 1935), and McIlroy v. N.J. Title Guar. & Trust Co., 126 N.J. Eq. 462 (Ch. 1939), among other cases. However, such cases do not address the issue of what shall constitute a deposit since, in each of the cited decisions it is manifest that the funds accepted by the banks were subject to the depositor's order and were, in fact, committed to the banks for convenience and safety  the traditional indices of a deposit.
In Sears v. First Federal S. & L. Ass'n of Chicago, 1 Ill. App.3d 621, 275 N.E.2d 300 (App. Ct. 1971), the court rejected a claim by plaintiffs that tax escrow payments by mortgagors constituted "special deposits," on the ground that such payments were not "deposits" at all. After reviewing the mortgage instruments which, like those at bar, required such payments as a condition of the mortgage and treated them as merely one aspect of the mortgagor's indebtedness, the court held:
* * * Upon consideration of all of the above circumstances, we conclude that the monthly sums paid to defendant are not deposits in *602 any legal sense of that term but they are simply payments by a debtor upon amounts due to the creditor.
These terms "deposit" and "payment" have a variety of legal meanings. However, one attribute of a deposit is that the depositor retains a right, generally under stated circumstances, to receive back all or part of the deposit or its equivalent; quite analogous to the rights of a creditor. People ex rel. Housing Authority of City of East St. Louis v. Hursey, 7 Ill.2d 537, 544, 131 N.E.2d 483; Gits v. Foreman, 360 Ill. 461, 470-471, 196 N.E. 434; People ex rel. Russel v. Michigan Avenue Trust Co., 232 Ill. App. 456, 458. In payment, the money is delivered to the creditor and the debtor receives simply satisfaction of the debt; either pro tanto or in full as the case may be. United States v. Isthmian Steamship Co., 359 U.S. 314, 318, 79 S.Ct. 857, 3 L.Ed.2d 845; People ex rel. Brown v. Stelle, 361 Ill. 45, 49-50, 196 N.E. 816; 70 C.J.S. Payment § 1.
Webster's Second New International Dictionary defines the verb "to pay" as "to discharge one's obligation." Under the note here involved, the debtor makes a payment and receives simply and only pro tanto satisfaction of his debt. The central attribute of a deposit is lacking. The questioned language of the note executed by plaintiff uses the concept of payment some seven or eight times. No language refers to a deposit of funds. No right of refund to the borrower is established or even mentioned. All that we have here from the language of this note is a binding direction imposed upon defendant as a creditor concerning payment of taxes and insurance. Liese v. Hentze, 326 Ill. 633, 639, 158 N.E. 428; Village of Winfield v. Reliance Insurance Co., 64 Ill. App.2d 253, 257-258, 212 N.E.2d 10; Industrial Development Corp. v. United States, 138 F. Supp. 63, 64 (N.D. Ill. 1955). [275 N.E.2d at 304-305]
Similarly, in Durkee v. Franklin Savings Ass'n, supra, 309 N.E.2d 118, the court noted that a true deposit relationship is "a contractual relationship between the depositor and the depositary bank which arises from the delivery of money by the depositor into the possession of the bank." 309 N.E.2d at 120. The court then rejected the claim that the tax payments constituted a deposit:
Plaintiffs' mortgage agreement is devoid of any language that would allow them to receive back any or all of their monthly partial tax and insurance payments after such sum is paid to defendant. It was incumbent upon plaintiffs to pay these tax and insurance items monthly in order to discharge their monthly contractual obligation to do so. Thus, plaintiffs' monthly payments toward the real estate *603 taxes and insurance premium on their mortgaged property did not constitute deposits in the legal sense of that term; a fortiori, the payments did not constitute special deposits. [Id. at 121]
Generally, we find that the holdings in Sears and Durkee to the effect that the tax payments do not constitute "deposits" are sound. As noted earlier, none of the traditional attributes of a deposit relation is present. We therefore conclude that such payments are not deposits. Hence, plaintiffs' contentions that a trust relationship exists on the theory that the tax payments are special deposits is without merit.
Further, even if such payments were to be considered "deposits," there is a presumption that a deposit in a bank is general. Maurello v. Broadway Bank & Trust Co., 114 N.J.L. 167, 173 (E. & A. 1935); 5 Scott, op. cit., § 530 at 3685; Bogert, op. cit., § 21 at 160; Restatement 2d, Trusts, § 12, Comment 1. By the great weight of authority, a deposit does not become "special" simply because the depositor wishes to have the bank devote the deposited funds to a special purpose. Thus, in 5 Scott, op. cit., § 530 at 3680, it is said:
A special deposit is to be distinguished, however, from a general deposit made for a special purpose. Ordinarily, in the case of a general deposit, the bank undertakes to pay checks drawn by the depositor. The bank may undertake, however, to apply the money deposited in some other way than by honoring the checks of the depositor. The understanding may be that the bank will pay a note of the depositor when presented at the bank, or that it will pay a mortgage of the depositor on the receipt of an instrument acknowledging satisfaction of the mortgage by the mortgagee, or that it will pay to the vendor of land the purchase price on the receipt of a deed to the land, or that it will act as stakeholder between the depositor and a third person and will pay whichever ultimately proves to be entitled to the payment. Banks frequently undertake to render services of this character. If the bank fails before it has paid out the money, the question arises whether the depositor is entitled to priority over other creditors of the bank. If the depositor retained the beneficial interest in the money, and the bank was not entitled to treat the money as it own, the depositor is entitled to the money on the failure of the bank if it still holds the money; and if it has mingled the money with its own, he is entitled to priority *604 over other creditors if he can trace the money into the assets of the bank.
On the other hand, if the depositor did not retain the beneficial interest in the money, but the bank was entitled to treat the money as its own, he is not entitled to priority over general creditors of the bank. In such a case the money deposited is simply the consideration for the contractual obligation of the bank to carry out the purpose for which the deposit was made. Such a deposit is a general one although made for a special purpose. The relation is not quite the same as that which arises in the case of the usual general deposit, but it differs only in that the understanding is that money is to be paid out for the purpose stated, rather than on the presentation of checks of the depositor. As in the case of the usual general deposit, the bank is under a merely personal liability and does not hold the money in trust.
And in Restatement 2d, Trusts, § 12, Comment 1:
Where the deposit is in escrow, that is where the money is to be paid to a third person on the happening of a designated event and in the meantime the depositor has no right to withdraw the money, it depends upon the manifestation of the intention of the parties whether the bank may use as its own the money deposited or whether the money shall be held in trust. Such a deposit ordinarily indicates an intention that the bank may use the money as its own, the bank undertaking to pay to the third person the amount of the deposit on the happening of the designated event.
Accord: Bogert, op. cit., § 21 at 158; In Re Goodson Steel Corp., 488 F.2d 776, 780 (5 Cir.1974); First National Bank of Clinton v. Julien, 383 F.2d 329, 336-338 (8 Cir.1967); Sears v. First Federal S. & L. Ass'n of Chicago, supra, 275 N.E.2d at 307.
As noted in Maurello, whether a deposit shall be considered general or special must be determined "by the facts and circumstances attending the making of the deposit, and the rule is that a deposit is not special unless made so by the depositor or unless made in particular capacity." 114 N.J.L. at 173. While language in Maurello might be taken to indicate that a deposit may be deemed special simply where a depositor delivers money to the bank for "some particular designated purpose, as a note for collection, money to pay a *605 particular note or draft, &c.," Id. at 173, it is apparent that Maurello did not have occasion to consider the distinction between a general deposit for a special purpose and a special deposit and, in any event, clearly states that a special deposit is a matter of intent. Similarly, in Deal v. Asbury Park & Ocean Grove Bank, supra, it is clear that the borough opened a separate and segregated account for the payment of its bond obligations, thus establishing a special account. Hence, Deal also did not consider the distinction noted above.
At any rate, proof that a special deposit was intended must be clear. Restatement 2d, Trusts, § 12, Comment 1; Bogert, op. cit., § 21 at 158. Further, as noted earlier, the precise distinction between a general deposit for a special purpose and a special deposit is that in the latter case it is clearly understood that the funds deposited shall be kept separate and apart and shall not be commingled. On the other hand, in a general deposit for a special purpose the depositor has no intention to segregate the funds and there is no prohibition against the bank using the funds for its own purposes and thereafter paying the debt from its general funds. See First National Bank of Clinton v. Julien, supra at 337; In Re Goodson Steel Corp., supra at 779-780.
In the case at bar, even though the tax payments were earmarked for a particular purpose, there is no indication that such funds were to be kept separate and apart or that the banks were to be precluded from using them in the regular course of their business. As noted previously, the circumstances attendant upon the parties' relationships strongly indicate that the banks could commingle such funds and thereafter pay the taxes from their general funds. Thus, the facts in this case do not warrant a holding that a trust relation arose between plaintiffs and defendants either on general trust principles or on the theory that the "deposits" for tax payments were "special deposits."
Plaintiffs finally contend that defendants were "unjustly enriched" through their use of the tax payments and that the doctrine of unjust enrichment mandates that defendants *606 be held liable for any gains therefrom. However, this contention is manifestly frivolous. Our finding that the parties stood in a relationship of debtor and creditor necessarily implies a finding that the banks were entitled to commingle the tax payments, use them for their own purposes and thereafter pay the real estate taxes from their general funds. Hence, even if there were proof of enrichment, such would not be unjust. See Carpenter v. Suffolk Franklin Savings Bank, supra, 346 N.E.2d at 900; Brooks v. Valley National Bank, supra, 548 P.2d at 1171.
Plaintiffs rely upon Derenco, Inc. v. Benj. Franklin Federal S. & L. Ass'n, supra, for the proposition that mortgagors required to tender advance tax payments are entitled under the theory of "quasi-contract" to recover any money generated through the use of such advance payments. In Derenco the court held that the defendant, having required plaintiff to tender the advance tax payments for defendant's own security, would receive an unjustified "gratuitious windfall" if it were permitted to retain for itself any funds beyond that required as security. 577 P.2d at 488.
In this State it is well settled that the theory of unjust enrichment or the collateral principle of constructive trust is predicated upon a finding that one party has taken unconscionable advantage over another. See West Caldwell v. Caldwell, 26 N.J. 9, 29 (1958). As such, there must be clear proof of some wrongful act, such as fraud, mistake, undue influence or breach of a confidential relationship, before a party may claim a right to recovery. See generally, D'Ippolito v. Castoro, 51 N.J. 584, 589 (1968); Gray v. Bradley, 1 N.J. 102, 104 (1948). In the case at bar, proof of such wrongdoing or the receipt of an unconscionable benefit is entirely wanting. Indeed, the evidence clearly establishes that defendants made the tax payments as required and, as shown earlier, did nothing with the advance tax funds that was not fairly within their agreement with plaintiffs. To the extent that Derenco, Inc. v. Benj. Franklin Federal S. & *607 L. Ass'n, supra, would warrant a contrary conclusion in this case, it is rejected.
In view of the foregoing, we affirm the decision below on the merits of the test case to the effect that there was no trust relationship between the parties and the defendants would not be liable to plaintiffs for the asserted claim. As a consequence of this holding it follows that there is no further purpose for certification of the class action and that the complaint should be dismissed. So ordered.[2]

II

Injunction against use of the "in trust" language
Despite the fact that the trial judge found that no trust was created he nevertheless directed that "to afford a practical remedy to protect the future rights of mortgagors * * * mortgages entered into after January 1, 1978, eliminate this inappropriate language, i.e., `to be held in trust.'" 154 N.J. Super. at 600-601. In thus going beyond the pleadings in imposing this injunction the trial judge was clearly in error. Based upon the pleadings, pretrial proceedings and the record herein there was no legal warrant for the issuance of an injunction in futuro against defendants pertaining to unknown mortgagors. Cf. Martell v. Lane, 22 N.J. 110, 114 (1956); Scott v. Stewart, 2 N.J. 508, 512 (1949). We therefore reverse that portion of the order below.

*608 III

Counsel fees and costs
Counsel for plaintiffs applied to the trial judge for a substantial counsel fee based upon their monumental efforts in this case. While expressing his desire to so reward counsel, the trial judge reserved on this issue. 154 N.J. Super. at 601. Since plaintiffs have been unsuccessful in this litigation, resulting in the dismissal of the class action, there is no warrant under existing law or our rules of court for the award of counsel fees. See R. 4:42-9. The application for fees is denied and the judgment below, insofar as it reserves on the issue of fees, is vacated.
As to plaintiffs' application for costs, we note that "costs shall be allowed as of course to the prevailing party." R. 4:42-8(a). There is no provision made for assessing costs against the prevailing party. In fact, as the court noted in In re Caruso, 18 N.J. 26, 38 (1955), costs "are said to be in the nature of incidental damages allowed to indemnify the successful party * * *." (emphasis supplied). Hence, that portion of the judgment taxing costs against defendants is also reversed. Further, we deem it fair because of the novelty of the issue in this State that no costs be assessed against plaintiffs and that both parties assume the burden of their own costs. See generally, Duffy v. Bill, 32 N.J. 278, 295 (1960); cf. Looman Realty Corp. v. Broad St. Nat. Bk. of Trenton, 74 N.J. Super. 71, 85 (App. Div.), certif. den. 37 N.J. 520 (1962); Finch, Pruyn & Co., Inc. v. Martinelli, 108 N.J. Super. 156, 159 (Ch. Div. 1969).
Affirmed in part, reversed in part.
NOTES
[1] Contra, see Derenco, Inc. v. Benj. Franklin Fed. S. & L. Ass'n, 281 Or. 533, 577 P.2d 477 (Sup. Ct. 1978); Buchanan v. Brentwood Federal S. & L. Ass'n, 457 Pa. 135, 320 A.2d 117 (Sup. Ct. 1974).
[2] We note that the trial judge rejected defendants' proffer of custom and usage in support of their construction of the relationship between the parties. He did so by construing our opinion remanding the matter as precluding consideration of those factors. We did did not so intend. Indeed, we would note that custom and usage are aids in determining the meaning of language in an instrument. Nevertheless, since evidence in those respects was not part of the record, we do not consider them in reaching our conclusions.